IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:23-cv-00318-RSB |
| | ) | |
| A & G COAL CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## UNITED STATES' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

LEGAL BACKGROUND .................................................................................................. 2

   I.   Notices of Violation and Cessation Orders ........................................................... 4

   II.   Corporate Civil Penalties .................................................................................... 6

      A.   Penalty Assessment and Calculation ................................................................ 6

      B.   Notification to Permittee of Penalty and Opportunities for Review .............................. 7

      C.   Payment of the Penalty ................................................................................. 8

   III.   Individual Civil Penalties .................................................................................... 9

      A.   Penalty Assessment and Calculation and Notification of Individual .............................. 9

      B.   Opportunities for Review and Payment ........................................................... 11

   IV.   The Federal Debt Collection Procedure Act ..................................................... 12

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 13

   I.   Defendants' Unpaid Civil Corporate Penalties ................................................ 13

   II.   Defendant James C. Justice, III's Unpaid Individual Civil Penalties .............................. 18

STANDARD OF REVIEW ............................................................................................. 21

ARGUMENT .................................................................................................................... 22

   I.   Defendants Admit the Allegations in Count I .................................................. 23

   II.   Defendant Justice Indisputably Owes the Individual Civil Penalties Sought in Count II. 24

   III.   Defendants' Affirmative Defenses Fail as a Matter of Law. ........................................... 26

      A.   Defendants Have Waived Any Right to Contest the Underlying Violations or the Amount of the Corporate Penalties and Have Conceded Liability as to the Individual Civil Penalties ....................……………..........................................................................……… 27

B.   Defendants' Admissions Foreclose any Genuine Issue of Material Fact Concerning Adequacy of Notice and Service............................................................................................ 29

C.   The United States' Claims Are Not Barred by the Statute of Limitations..................... 32

D.   The Individual Civil Penalties Do Not Violate the Excessive Fines Clause of the Eighth Amendment.................................................................................................................... 35

   CONCLUSION............................................................................................................ 49

## **TABLE OF AUTHORITIES**

**Cases**

*3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994) ...................................................... 32

*Adams v. Am. Optical Corp.*, 979 F.3d 248 (4th Cir. 2020) .................................... 21, 22

*Alexander v. United States*, 509 U.S. 544 (1993) .......................................................... 36

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................ 21, 22

*Arch Min. Corp. v. Babbitt*, 894 F. Supp. 974 (S.D.W. Va. 1995) ................................ 32

*Austin v. United States*, 509 U.S. 602 (1993) ............................................................... 36

*B & M Coal Corp. v. Off. of Surface Min. Reclamation & Enf't*, 699 F.2d 381 (7th Cir. 1983) .. 28

*Best Canvas Products & Supplies v. Ploof Truck Lines*, 713 F.2d 618 (11th Cir.1983) ............. 30

*Blackhawk Mining Co. v. Andrus*, 711 F.2d 753 (6th Cir. 1983) .................................. 28

*Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.*, 492 U.S. 257 (1989) ............... 35

*Com. Standard Ins. Co. v. Ala. Surface Min. Reclamation Comm'n*, 443 So. 2d 1245 (Ala. Civ. App. 1983) ........................................................................................... 46

*FERC v. Powhatan Energy Fund, LLC*, 949 F.3d 891 (4th Cir. 2020) ......................... 33

*Graham v. Off. of Surface Mining Reclamation & Enf't*, 722 F.2d 1106 (3d Cir. 1983) ............. 28

*Grashoff v. Adams*, 65 F.4th 910 (7th Cir. 2023) ......................................................... 48

*Hodel v. Va. Surface Mining & Reclamation Ass'n,* 452 U.S. 264 (1981) ................................ 2, 3

*Kelly v. U.S. E.P.A.*, 203 F.3d 519 (7th Cir. 2000) ...................................................... 46

*Korangy v. U.S. F.D.A.*, 498 F.3d 272 (4th Cir. 2007) ......................................... passim

*Lucas v. Burnley*, 879 F.2d 1240 (4th Cir. 1989) ......................................................... 30

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (4th Cir. 1986) ............. 22

*Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339 (4th Cir. 2014) ................................. 30

*Nat'l Coal Ass'n v. Lujan*, 979 F.2d 1548 (D.C. Cir. 1992) .............................. 4, 12, 44

*New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20 (4th Cir. 1963) ................................................ 30

*Newell Recycling Co. v. U.S. E.P.A.*, 231 F.3d 204 (5th Cir. 2000) ............................................ 38

*Ohio Valley Env't Coal., Inc. v. Hobet Mining, LLC*, No. CIV.A. 3:08-0088, 2008 WL 5377799

   (S.D.W. Va. Dec. 18, 2008) ................................................................................................. 49

*Richardson v. Clarke*, 52 F.4th 614 (4th Cir. 2022) ................................................................... 21

*Thomas v. Comm'r*, 62 F.3d 97 (4th Cir. 1995) ........................................................................ 36

*Timbs v. Indiana*, 139 S. Ct. 682 (2019) ........................................................................... 35, 36

*U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390 (4th Cir. 2013) .. 36, 37, 49

*U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015) ........................................ 36, 44

*United States v. $134,750 U.S. Currency*, 535 F. App'x 232 (4th Cir. 2013) ............................. 38

*United States v. Ahmad*, 213 F.3d 805 (4th Cir. 2000) ......................................................... 37, 48

*United States v. Bajakajian*, 524 U.S. 321 (1998) ..................................................... 35, 36, 37, 43

*United States v. Blackman*, 746 F.3d 137 (4th Cir. 2014) ........................................................... 38

*United States v. Chaplin's, Inc.*, 646 F.3d 846 (11th Cir. 2011) ................................................. 44

*United States v. Cupps*, No. 6:05-CV-0380-VEH, 2006 WL 8437966 (N.D. Ala. Apr. 17, 2006)

   .......................................................................................................................................... 28, 33

*United States v. Finley*, 835 F.2d 134 (6th Cir. 1987) ................................................................. 28

*United States v. Jalaram, Inc.*, 599 F.3d 347 (4th Cir. 2010) ...................................................... 36

*United States v. Kobaly*, No. CIV.A. 83-2334, 1987 WL 18820 (W.D. Pa. Apr. 7, 1987) .......... 28

*United States v. Malewicka,* 664 F.3d 1099 (7th Cir. 2011) ......................................................... 38

*United States v. McCune*, 763 F. Supp. 916 (S.D. Ohio 1989) .................................................... 32

*United States v. Smithfield Foods, Inc.*, 191 F.3d 516 (4th Cir. 1999) ......................................... 49

*Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027 (4th Cir. 2020) ........................................ 21

**Statutes**

28 U.S.C. § 2462 ............................................................................................ 32, 33

28 U.S.C. § 3001 ................................................................................................ 13

28 U.S.C. § 3002 ................................................................................................ 13

30 U.S.C. § 1201 ............................................................................................... 1, 3

30 U.S.C. § 1253 .................................................................................................. 3

30 U.S.C. § 1254 .................................................................................................. 4

30 U.S.C. § 1256 .................................................................................................. 3

30 U.S.C. § 1257 .................................................................................................. 3

30 U.S.C. § 1258 .................................................................................................. 1

30 U.S.C. § 1259 ................................................................................................. 48

30 U.S.C. § 1265 ............................................................................................... 1, 3

30 U.S.C. § 1266 .................................................................................................. 3

30 U.S.C. § 1268 .......................................................................................... passim

30 U.S.C. § 1271 ..................................................................................... 5, 9, 13, 47

30 U.S.C. § 1275 .................................................................................................. 6

30 U.S.C. § 1276 ................................................................................................. 39

30 U.S.C. § 1291 .................................................................................................. 3

31 U.S.C. § 3717 .................................................................................................. 9

**Regulations**

30 C.F.R. § 773.4 ................................................................................................. 4

30 C.F.R § 845.15 ................................................................................................ 7

30 C.F.R. § 701.5 ................................................................................................ 10

30 C.F.R. § 800.15 .............................................................................................. 48

30 C.F.R. § 816.45 ............................................................................................................. 48

30 C.F.R. § 816.49 ............................................................................................................. 46

30 C.F.R. § 843.11 .......................................................................................................... 5, 47

30 C.F.R. § 843.12 ............................................................................................................... 5

30 C.F.R. § 843.14 ............................................................................................................. 31

30 C.F.R. § 845.12 ............................................................................................................... 6

30 C.F.R. § 845.15 .......................................................................................................... 7, 17

30 C.F.R. § 845.17 ............................................................................................................... 7

30 C.F.R. § 845.2 ................................................................................................................. 4

30 C.F.R. § 845.20 ...................................................................................................... passim

30 C.F.R. § 846.12 ...................................................................................... 10, 11, 19, 47

30 C.F.R. § 846.14 ...................................................................................................... passim

30 C.F.R. § 942.700 *et seq* ................................................................................................. 4

30 C.F.R. §§ 843.15 ............................................................................................................. 6

31 C.F.R. § 901.9 ................................................................................................................. 9

30 C.F.R. pt. 816 ............................................................................................................... 46

30 C.F.R. § 816.102 ........................................................................................................... 48

30 C.F.R. § 816.71 ............................................................................................................. 48

30 C.F.R. pt. 843 ................................................................................................................. 5

30 C.F.R. § 843.16 ............................................................................................................... 6

30 C.F.R. § 845.13 .......................................................................................................... 6, 7

30 C.F.R. § 845.14 .......................................................................................................... 6, 7

30 C.F.R. § 845.18 ...................................................................................................... 7, 8, 16

30 C.F.R. § 845.19 ................................................................................................. 7, 8, 9, 33

30 C.F.R. § 846.17 ...................................................................................................... passim

30 C.F.R. § 846.18 ...................................................................................................... passim

30 C.F.R. 942.843 ............................................................................................................... 5

30 C.F.R. § 942.845 ........................................................................................................... 5

43 C.F.R. § 4.1162 ............................................................................................................. 6

43 C.F.R. § 4.1270 ............................................................................................................. 8

43 C.F.R. § 4.22 ................................................................................................................ 8

43 C.F.R. § 4.1152 ........................................................................................................... 27

43 C.F.R. § 4.1302 ........................................................................................... 12, 25, 26, 28

43 C.F.R. §§ 4.1158 ........................................................................................................... 8

43 C.F.R. §§ 4.1161 ........................................................................................................... 6

43 C.F.R. § 4.1151 ............................................................................................................. 8

53 Fed. Reg. 3664, 3669 (Feb. 8, 1988) ......................................................................... 40

53 Fed. Reg. 8752-01, 8752-53 (Mar. 17, 1988) ........................................................... 28

83 Fed. Reg. 10,611 (Mar. 12, 2018) .............................................................................. 38

84 Fed. Reg. 10,670 (Mar. 22, 2019) .............................................................................. 38

88 Fed. Reg. 24,330 (Apr. 20, 2023) ………………………………………………….7

**Rules**
Fed. R. Civ. P. 33(b)(3)..................................................................................................... 31

Fed. R. Civ. P. 56(a) ........................................................................................................ 21

**Other Authorities**
S. Rep. No. 95-128, at 57-58 (May 10, 1977) ................................................................. 43

## <u>ACRONYMS AND ABBREVIATIONS</u>

| | |
|---|---|
| AML | Abandoned Mine Lands |
| FDCPA | Federal Debt Collection Procedure Act |
| ICP | Individual Civil Penalty |
| NOPA | Notice of Proposed Assessment |
| NOV | Notice of Violation |
| NPDES | National Pollutant Discharge Elimination System |
| OSMRE | Office of Surface Mining Reclamation and Enforcement |
| SMCRA | Surface Mining Control and Reclamation Act of 1977 |

## EXHIBITS

Exhibit A                    Table of Corporate Penalties in Count I

Exhibit B                    Table of Individual Civil Penalties in Count II

Exhibit C                    United States' Discovery Requests

Exhibit D                    Defendants' Responses to the United States' Discovery Requests

Exhibit E                    Defendants' Documents Produced in Discovery, DEF000085-86

Exhibits F-1 to F-17         Individual Civil Penalty Notices of Proposed Assessment &
                             Worksheets

Exhibits G-1 to G-9          Abatement Agreements

Exhibits H-1 to H-17         Individual Civil Penalty Final Orders

Exhibits I-1 to I-8          Inspection Reports

Exhibit J                    January 12, 2021 Email from Emily Morris, Assistant Solicitor,
                             U.S. Department of the Interior, to Steve Ball, Vice President and
                             General Counsel, Bluestone

Exhibit K                    Declaration of Darrell Taylor

## **INTRODUCTION**

The United States sued thirteen companies and James C. Justice, III for unpaid debts resulting from the Defendants' persistent violations of the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), SMCRA's regulations, and SMCRA mining permits between 2018 and 2022, and for failure to pay abandoned mine land ("AML") reclamation fees for coal mined between 2016 and 2022.  On November 22, 2023, the Court entered judgment against Defendants on the claim seeking to recover unpaid AML fees.  ECF No. 31.  The United States now moves for summary judgment on the two remaining claims.

SMCRA was enacted in response to the serious harms that surface coal mining can inflict on the environment and on public health and safety, including "polluting the water," "creating hazards dangerous to life and property," "causing erosion and landslides," "contributing to floods," and "destroying or diminishing the utility of land for" other purposes, such as "commercial, industrial, residential, recreational, agricultural, and forestry purposes."  30 U.S.C. § 1201(c).  SMCRA requires not only that surface coal mining be conducted in a manner that protects the environment but also that, after those operations are complete, the areas be reclaimed, *i.e.*, the land must be returned to a condition "capable of supporting the uses which it was capable of supporting prior to any mining, or higher or better uses."  *Id.* § 1265 (b)(2); *see also id.* §§ 1202(a), (d), (e), (h), 1258.

The United States brought three counts against Defendants: (1) a claim to recover uncontested and unpaid corporate civil penalties owed by Premium Coal Company, Inc., National Coal, LLC, and S and H Mining, Inc. ("S+H Mining"); (2) a claim to recover uncontested and unpaid individual civil penalties owed by James C. Justice, III; and (3) a claim to recover AML reclamation fees and audit debts owed by A & G Coal Corporation, Bluestone

1

Coal Corporation, Bluestone Oil Corporation, Chestnut Land Holdings, LLC, Dynamic Energy, Inc., Frontier Coal Company, Justice Energy Company, Inc., Kentucky Fuel Corporation, Pay Car Mining, Inc., and Tams Management, Inc.  Defendants conceded liability as to the AML reclamation fees and audit debts sought in Count III, but Counts I and II remain unresolved.  *See* ECF Nos. 30, 31.  As their Answer and discovery responses demonstrate, Defendants do not dispute the existence of the debts sought in Counts I and II but seek to avoid paying them.  The civil penalties sought in Counts I and II are the result of violations of SMCRA at mines that are no longer active but where Defendants have delayed or declined to complete the required reclamation work.  The Office of Surface Mining Reclamation and Enforcement ("OSMRE") imposed these civil penalties against Defendants over a period of years because Defendants continuously failed to perform that reclamation work.  In a significant number of cases, the work still has not been completed, leaving these inactive mines rife with environmental and safety hazards.

Defendants' Answer concedes the majority of the United States' claims.  The parties have engaged in targeted discovery, which, in combination with the pleadings, demonstrates there is no dispute of material fact regarding any of the United States' claims.  Although Defendants assert three affirmative defenses, none precludes summary judgment as a matter of law.  As such, the Court should grant summary judgment in favor of the United States.

## LEGAL BACKGROUND

SMCRA is a "comprehensive statute designed to 'establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations.'" *Hodel v. Va. Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 268 (1981) (quoting 30 U.S.C. § 1202(a)).  It governs all surface coal mining and reclamation operations in the United States

2

and specifies minimum permit and performance standards for those operations.  30 U.S.C.

§§ 1256, 1257, 1258, 1265 & 1266.  A person or entity cannot engage in surface coal mining or

reclamation operations in the United States without first obtaining a permit from the relevant

regulatory authority.  *Id.* § 1256 (a).

> Congress created SMCRA because:
>
> many surface mining operations result in disturbances of surface areas that burden
> and adversely affect commerce and the public welfare by destroying or diminishing
> the utility of land . . . by causing erosion and landslides, by contributing to floods,
> by polluting the water, by destroying fish and wildlife habitats, by impairing natural
> beauty, by damaging the property of citizens, by creating hazards dangerous to life
> and property . . . and by counteracting governmental programs and efforts to
> conserve soil, water, and other natural resources.

*Id.* § 1201(c).  SMCRA applies to every aspect of surface coal mining and reclamation, from the

construction of roads to reach a mining site to the excavation of the coal to all activities

necessary to adequately reclaim the site after the completion of mining.  *Id.* § 1291 (27), (28).

Among other things, SMCRA is intended to assure that "the rights of surface landowners and

other persons with a legal interest in the land or appurtenances thereto are fully protected from

[surface coal mining] operations" and "adequate procedures are undertaken to reclaim surface

areas as contemporaneously as possible with the surface coal mining operations."  *Id.* § 1202 (b),

(e).  Further, Congress found that federal regulation of surface mining reclamation work was

important so as not to give coal producers in certain states unfair advantages over producers in

other states in the event states regulated reclamation differently.  *Id.* § 1201(g).

As a "cooperative federalism" statute, SMCRA allows states to attain primary jurisdiction

(or "primacy") over surface coal mining and reclamation activities on non-Federal and non-

Indian lands within their borders upon approval of a State program that meets the minimum

federal standards.  *Hodel*, 452 U.S. at 289; *see* 30 U.S.C. § 1253.  If a state does not seek or

maintain primacy, OSMRE, an agency within the U.S. Department of the Interior, retains primary jurisdiction over surface coal mining and reclamation within that state and operates a "Federal program" to implement SMCRA.  30 U.S.C. § 1254(a).  OSMRE operates a Federal program in Tennessee, which does not have an approved State program and which is where the mine sites with the violations that accrued the civil penalties in Counts I and II are located.  30 C.F.R. § 942.700 *et seq*.

As part of an application for a SMCRA permit, an applicant must submit a reclamation plan.  30 U.S.C. § 1258(a).  Once a permit is approved, a permittee is obliged to fulfill the requirements of the approved reclamation plan and otherwise meet the environmental protection standards of SMCRA; these obligations do not cease even if the permit expires.  *See* 30 C.F.R. § 773.4(a) ("A permittee need not renew the permit if no surface coal mining operations will be conducted under the permit and solely reclamation activities remain to be done.  Obligations established under a permit continue until completion of . . . reclamation operations . . . .").

As described below, SMCRA and its implementing regulations set forth detailed enforcement procedures, including procedures for assessing civil and criminal penalties for violations of a permit term or condition or a statutory or regulatory requirement.  *See Nat'l Coal Ass'n v. Lujan*, 979 F.2d 1548, 1549 (D.C. Cir. 1992).  These penalties are intended to "deter violations" of SMCRA by the coal mining industry and "ensure maximum compliance with [SMCRA's] terms and purposes," 30 C.F.R. § 845.2, and are therefore essential to the environmental, safety, and economic purposes of SMCRA.

## I.     Notices of Violation and Cessation Orders

When a permittee violates a term or condition of its SMCRA permit or a relevant statutory or regulatory provision and that violation does not create imminent harm to public

health or safety, or the environment, OSMRE issues a notice of violation ("NOV") to the permittee.  30 U.S.C. § 1271 (a)(3); 30 C.F.R. § 843.12(a)(1).[1]  The NOV contains, among other things, a description of the violation, the actions required to remedy it, and the time for completion of abatement.  30 U.S.C. § 1271 (a)(5); 30 C.F.R. § 843.12(b).  If a permittee fails to comply with the remedial steps outlined in the NOV within the time period set for abatement (or as subsequently extended, *see, e.g.*, 30 C.F.R. § 843.12(c)), then OSMRE must issue a cessation order requiring all active mining to halt at the permitted site until the violation is abated.  30 U.S.C. § 1271 (a)(3); 30 C.F.R. § 843.11(b).

If, however, a violation "creates an imminent danger to the health or safety of the public, or is causing, or can reasonably be expected to cause significant, imminent environmental harm to land, air, or water resources," OSMRE foregoes the NOV and instead directly issues an imminent harm cessation order requiring all active mining to halt at the permitted site until the violation is abated or the cessation order is modified, vacated, or terminated.  30 U.S.C. § 1271 (a)(2); 30 C.F.R. § 843.11(a)(1).

As with an NOV, a cessation order contains a description of the violation, the actions required to remedy it, and the time for completion of abatement, if appropriate.  30 U.S.C. § 1271 (a)(5); 30 C.F.R. § 843.11(c).  SMCRA and OSMRE's regulations set forth procedures

---

[1] The Federal program that applies to Tennessee expressly adopts the enforcement provisions contained in 30 C.F.R. part 843 and the penalty provisions contained in 30 C.F.R. part 845.  30 C.F.R. §§ 942.843, 942.845.

under which a permittee may seek both informal and formal administrative review of NOVs and cessation orders.  30 U.S.C. § 1275; 30 C.F.R. §§ 843.15, 843.16; 43 C.F.R. §§ 4.1161, 4.1162.

## II.  Corporate Civil Penalties

Corporate civil penalties are those assessed directly against the permittee, which is generally a corporate entity, for violations of a term or condition of its SMCRA permit or a relevant statutory or regulatory provision.

### A.  Penalty Assessment and Calculation

SMCRA and its implementing regulations require the Secretary of the Interior, through OSMRE, to assess civil penalties against the permittee for every cessation order that it issues.  30 U.S.C. § 1268(a); 30 C.F.R. § 845.12.  OSMRE is also required to assess civil penalties for NOVs involving more significant violations but retains discretion to assess civil penalties for NOVs involving less significant violations.  *Id.*

OSMRE generally uses a point system, outlined in the federal regulations, to determine whether a penalty is required or discretionary and the amount of the penalty.  30 C.F.R. §§ 845.13, 845.14.  As directed by Congress, *see* 30 U.S.C. § 1268(a), OSMRE assesses points based on (1) the history of previous violations at the permitted site; (2) the seriousness of the violation, taking into consideration the probability of the occurrence of the event which the violated standard is designed to prevent, the extent of potential or actual damage caused by the violation, and the extent to which the violation obstructs enforcement; (3) the degree of negligence or reckless, knowing, or intentional conduct involved in the violation; and (4) the degree of good faith by the permittee in attempting to achieve compliance after notification of the violation.  30 C.F.R. § 845.13 (b).  Based on the points assessed for a violation, OSMRE determines the amount of a proposed civil penalty using a table promulgated at 30 C.F.R.

§ 845.14.  Penalties currently range between $79 for one point to $19,815 for 70 points.[2]  *Id.*

§ 845.14.

SMCRA gives OSMRE the discretion to treat each day of a continuing violation as a

separate violation for purposes of penalty assessment, also known as a daily civil penalty.  30

U.S.C. § 1268(a); 30 C.F.R. § 845.15(a).  In deciding whether to do so, OSMRE considers the

same factors in 30 C.F.R. § 845.13 relevant to the points assessment, as well as the extent to

which the permittee "gained any economic benefit as a result of a failure to comply."  30 C.F.R.

§ 845.15(a).  If a violation of 70+ points remains unabated for two or more days, OSMRE must

assess a penalty for a minimum of two days.  *Id.*  In addition, if a permittee does not timely abate

a violation identified in a NOV or imminent harm cessation order, OSMRE must assess an

additional penalty for each day that the violation is not abated beyond the abatement period set

forth in the NOV or cessation order up to a total of 30 days.  30 U.S.C. § 1268(h); 30 C.F.R

§ 845.15(b).

### B.     Notification to Permittee of Penalty and Opportunities for Review

When assessing a civil penalty, OSMRE informs the permittee of the proposed penalty

amount via a Notice of Proposed Civil Penalty Assessment or "NOPA."  *See* 30 U.S.C.

§ 1268(c); 30 C.F.R. § 845.17(b).  Separate and in addition to the opportunities for review of the

underlying violation, SMCRA and the federal regulations provide for both formal and informal

administrative review of the civil penalty assessed.  30 U.S.C. § 1268(b), (c); 30 C.F.R.

§§ 845.18, 845.19.  Within 30 days after receiving a NOPA, a permittee may request an informal

---

[2] OSMRE annually adjusts these amounts to account for inflation as required by the Federal
Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701.
*See, e.g.*, Civil Monetary Penalty Inflation Adjustments, 88 Fed. Reg. 24330 (Apr. 20, 2023)
(adjusting penalty amounts for 2023).

conference to review the amount of the proposed penalty.  *Id.* § 845.18(a), (b).  If the permittee

requests such a conference, within 30 days after service of the conference officer's action or, if

no informal conference is requested, within 30 days of service of the NOPA, a permittee may

request a formal hearing conducted by an administrative law judge.  30 U.S.C. § 1268(c); 30

C.F.R. § 845.19(a).  A permittee may seek further administrative review of the decision of an

administrative law judge by the Interior Board of Land Appeals.  43 C.F.R. §§ 4.1158, 4.1270.

If the permittee does not timely seek administrative review of the proposed penalty, "the

appropriateness of the amount of the penalty, and the fact of the violation . . . shall be deemed

admitted . . . ."  *Id.* § 4.1151(c).

## C.       Payment of the Penalty

Once a corporate penalty becomes a final order, payment is due and abatement of the

underlying violation will not withdraw or alter the penalty.  *See generally* 30 U.S.C. § 1268; 30

C.F.R. Part 845.  If a permittee fails to request an informal conference or formal hearing, the

penalty becomes a due and payable final order 30 days after service of the NOPA.  30 C.F.R.

§ 845.20(a); 43 C.F.R. §§ 4.1151, 4.22(e).  If the permittee requests an informal conference, the

penalty becomes a final order 30 days after service of the conference officer's action.  *See* 30

C.F.R. §§ 845.19(a), 845.20(a); 43 C.F.R. §§ 4.1151, 4.22(e).

If a permittee seeks formal review of the underlying violation or penalty, within 30 days

after service of the NOPA or the conference officer's action, the permittee must either pay the

proposed assessment amount in full or place the proposed amount in escrow with the Secretary.

30 U.S.C. § 1268(c); 30 C.F.R. § 845.19(a).  Failure to take either action within 30 days after

service of the NOPA or the conference officer's action results in the permittee's "waiver of all

legal rights to contest the violation or the amount of the penalty."  30 U.S.C. § 1268(c).

If the permittee requests a formal hearing under 30 C.F.R. § 845.19, the U.S. Department of the Interior's Office of Hearings and Appeals issues the final order of the Secretary. *See* 30 C.F.R. § 845.20(b)-(d).  The permittee may request judicial review of a final order issued by the Office of Hearings and Appeals, in which case the penalty amount continues to be held in escrow until the conclusion of the review process. *Id.* § 845.20(b).  If the permittee does not request further review of the final order issued by the Office of Hearings and Appeals, the escrowed funds are transferred for payment if the proposed penalty is affirmed, returned to the permittee in whole or in part if the proposed penalty is eliminated or reduced, or required to be supplemented if the penalty is increased on review. *Id.* § 845.20.

Delinquent civil penalties are subject to interest, 31 U.S.C. § 3717(a), (c)(1); 31 C.F.R. § 901.9(b), a six percent annual penalty on debts delinquent more than 90 days, 31 U.S.C. § 3717(e)(2); 31 C.F.R. § 901.9(d), and administrative expenses, 31 U.S.C. § 3717(e)(1); 31 C.F.R. § 901.9(c).  SMCRA provides that delinquent civil penalties "may be recovered in a civil action brought by the Attorney General at the request of the Secretary in any appropriate district court of the United States."  30 U.S.C. § 1268(d).

## III.    Individual Civil Penalties

Individual civil penalties are those assessed against an individual person, namely, a "director, officer, or agent" of the corporate permittee, generally when corporate penalties have failed to result in abatement of a violation.  30 U.S.C. § 1268(f).

### A.    Penalty Assessment and Calculation and Notification of Individual

"Whenever a corporate permittee violates a condition of a permit . . .  or fails or refuses to comply with any order issued under section 1271 of this title"—*i.e.*, a notice of violation, cessation order, or most any other "order incorporated in a final decision issued by the

Secretary"—"any director, officer or agent" of that corporate permittee "who willfully and knowingly authorized, ordered, or carried out" the violation of a permit condition or a failure or refusal to comply with an order of the Secretary may be subject to individual civil penalties under SMCRA.  *Id.* § 1268(f); 30 C.F.R. § 846.12(a).  "Willfully" includes acting "[w]ith intentional disregard or plain indifference to legal requirements."  30 C.F.R. § 701.5. "Knowingly" includes "an act or omission" that the individual "knew or had reason to know . . . would result in either a violation or a failure to abate or correct a violation."  *Id.*

When OSMRE issues an NOV or cessation order to a corporate permittee, it sends certain directors, officers, and agents of that corporation a Notice of Potential Liability for an Individual Civil Penalty Assessment.  *See* OSMRE Directives INE-40 & INE-4.[3]  The Notice of Potential Liability informs the individual of the underlying violation and cessation order, explains the statutory basis for individual civil penalties, explains that OSMRE considers the individual to possess legal authority to bring about abatement of the violation, and allows the individual to submit written documentation to describe with specificity all reasonable steps the individual took in their corporate capacity to bring about abatement.  *See id.*  The Notice of Potential Liability further explains that OSMRE may conclude that the individual "willfully and knowingly authorized, ordered, or carried out a violation, failure, or refusal to comply" with the legal requirements of the NOV or cessation order if the individual does not make OSMRE aware that he or she personally attempted to resolve the violation.  *See id.*

_____

[3] OSMRE Directive INE-40 is available here: https://www.osmre.gov/sites/default/files/pdfs/directive600.pdf.  OSMRE Directive INE-4 is available here: https://www.osmre.gov/sites/default/files/pdfs/directive601.pdf.

If OSMRE determines that an individual civil penalty is appropriate, OSMRE may issue a Notice of Proposed Assessment of Individual Civil Penalties to a director, officer, or agent of the permittee.  30 C.F.R. §§ 846.12, 846.17(a).  In the context of a permit violation by a corporate permittee, OSMRE may not assess an individual civil penalty until it has issued a cessation order to the permittee and that cessation order has remained unabated for 30 days.  *Id.* § 846.12(b).  OSMRE determines the amount of the proposed individual civil penalty consistent with the criteria in 30 C.F.R. § 846.14, which are derived from the criteria in 30 U.S.C. § 1268(a).  30 C.F.R. § 846.14(a).  These criteria include the individual's history of authorizing, ordering, or carrying out violations at the particular mining operation, the seriousness of the violation (as indicated by the extent of damage and/or the cost of reclamation), and the demonstrated good faith of the individual in attempting to achieve rapid compliance after notice of the violation.  *Id.*  As required by SMCRA, *see* 30 U.S.C. § 1268(a), OSMRE's regulations set a maximum penalty amount for each violation, currently $19,815.[4]  30 C.F.R. § 846.14(b).  However, "[e]ach day of a continuing violation may be deemed a separate violation and [OSMRE] may assess a separate individual civil penalty for each day the violation . . . continues, from the date of service of the underlying notice of violation, cessation order or other order incorporated in a final decision issued by the Secretary, until abatement or compliance is achieved."  *Id.* § 846.14(b).

**B.    Opportunities for Review and Payment**

The NOPA becomes a final order of the Secretary upon which payment is due 30 days after service unless the individual, within that 30 day period, either (1) files a petition for review

---

[4]  OSMRE annually adjusts this amount to account for inflation.  *See supra* n.2.

with the U.S. Department of the Interior's Office of Hearings and Appeals, or (2) reaches an agreement with OSMRE to a "schedule or plan for the abatement or correction" of the permit violation or the failure or refusal to comply with an order of the Secretary.  30 C.F.R. §§ 846.17(b), 846.18(a); *see also* 43 C.F.R. § 4.1302(a).  Failure to administratively appeal a NOPA for an individual civil penalty within 30 days of service "shall be deemed an admission of liability by the individual, whereupon the notice of proposed assessment shall become a final order of the Secretary and any tardy petition shall be dismissed."  43 C.F.R. § 4.1302(b).

If the individual petitions for review by the Office of Hearings and Appeals, payment is due if that Office issues a final order affirming or modifying (but not vacating) the penalty.  30 C.F.R. § 846.18(b).  If the individual reaches an agreement with OSMRE to abate the violation (*i.e.*, an "abatement agreement"), the individual may postpone payment until receipt of a final order from OSMRE stating that payment is due or written notice that abatement or compliance is satisfactory and the penalty has been withdrawn.  *Id.* § 846.18(c).

Beginning the thirtieth day after the issuance of a final order assessing an individual civil penalty, any delinquent penalty is subject to interest, late payment penalties, and processing and handling charges.  *Id.* § 846.18(d).[5]  As with corporate civil penalties, individual civil penalties "may be recovered in a civil action brought by the Attorney General at the request of the Secretary in any appropriate district court of the United States."  30 U.S.C. § 1268(d).

## IV.   The Federal Debt Collection Procedure Act

The Federal Debt Collection Procedure Act ("FDCPA") "provides the exclusive civil procedures for the United States (1) to recover a judgment on a debt; or (2) to obtain, before

---

[5] In 1992, in response to a facial challenge, the D.C. Circuit upheld OSMRE's individual civil penalty regulations.  *Nat'l Coal Ass'n v. Lujan*, 979 F.2d 1548 (D.C. Cir. 1992).

judgment on a claim for a debt, a remedy in connection with such claim."  28 U.S.C. § 3001(a).

The FDCPA broadly defines "debt" to include "an amount that is owing to the United States on

account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine,

assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement,

recovery of a cost incurred by the United States, or other source of indebtedness to the United

States," not owed under the terms of a contract.  *Id.* § 3002 (3)(B).  The amounts sought in

Counts I and II are thus debts under the FDCPA.  *See* Compl. ¶¶ 639, 648; Answer ¶¶ 639, 648.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.    Defendants' Unpaid Civil Corporate Penalties

1.    National Coal, Premium Coal, and S+H Mining have or had SMCRA permits for

surface coal mining operations in Tennessee and have conducted surface coal mining operations

under those permits in Tennessee.  Compl. ¶ 27; Answer ¶¶ 27-28.  National Coal, Premium

Coal, and S+H Mining have delayed or failed to perform certain reclamation work required by

SMCRA.  *See* Compl. ¶ 59; Answer ¶ 59.

2.    As relevant to the penalties sought in the Complaint, from 2018 through 2022,

OSMRE served on Premium Coal, National Coal, and S+H Mining 63 NOVs and 50 cessation

orders (of which 8 were imminent harm cessation orders[6]) for violations of SMCRA, SMCRA's

implementing regulations, and permit conditions at mining operations in Tennessee.  Compl.

¶¶ 28, 60, 64, 73, 77, 81, 85, 89, 93, 97, 106, 110, 124, 128, 137, 141, 146, 151, 155, 159, 163,

167, 171, 175, 179, 183, 187, 191, 195, 200, 204, 208, 221, 225, 234, 243, 249, 255, 259, 263,

---

[6] The Complaint cites 30 U.S.C. § 1271 (a)(2) for imminent harm cessation orders, *see* Compl.
¶¶ 183, 187, 191, 195, 243, 249, 454, 572, and 30 U.S.C. § 1271 (a)(3) for failure to abate
cessation orders.

267, 271, 280, 284, 293, 297, 301, 305, 309, 313, 317, 321, 326, 331, 335, 339, 343, 347, 351,

355, 360, 364, 368, 372, 376, 380, 384, 388, 392, 396, 400, 404, 408, 412, 416, 420, 424, 428,

432, 436, 440, 444, 449, 454, 458, 463, 467, 471, 475, 479, 483, 487, 504, 508, 512, 516, 525,

529, 538, 542, 546, 555, 559, 563, 568, 572, 576, 580, 584, 588, 592, 596, 600, 604; Answer

¶¶ 28, 60, 64, 73, 77, 81, 85, 89, 93, 97, 106, 110, 124, 128, 137, 141, 146, 151, 155, 159, 163,

167, 171, 175, 179, 183, 187, 191, 195, 200, 204, 208, 221, 225, 234, 243, 249, 255, 259, 263,

267, 271, 280, 284, 293, 297, 301, 305, 309, 313, 317, 321, 326, 331, 335, 339, 343, 347, 351,

355, 360, 364, 368, 372, 376, 380, 384, 388, 392, 396, 400, 404, 408, 412, 416, 420, 424, 428,

432, 436, 440, 444, 449, 454, 458, 463, 467, 471, 475, 479, 483, 487, 504, 508, 512, 516, 525,

529, 538, 542, 546, 555, 559, 563, 568, 572, 576, 580, 584, 588, 592, 596, 600, 604.

      3.     The underlying violations addressed by the NOVs and cessation orders identified

in the Complaint include, among other things, failures to: comply with contemporaneous

reclamation requirements; routinely maintain the face of a dam or its ditches and emergency

spillway; ensure the seismic stability of a dam; maintain sediment ponds and control measures;

maintain and prevent erosion of haul roads or clear them of debris; pass surface drainage through

an approved siltation structure before leaving the permit area; stabilize surface areas to

effectively control erosion; properly dispose of non-coal waste; post an adjusted bond amount on

an under-bonded site; maintain ditches to avoid uncontrolled drainage; and ensure that

discharges are in compliance with applicable law and effluent limitations by maintaining an

approved Clean Water Act National Pollutant Discharge Elimination System ("NPDES") permit.

Compl. ¶ 59; Answer ¶ 59.

      4.     Defendants failed to timely administratively contest any of the NOVs and

cessation orders listed in the Complaint.  Compl. ¶¶ 60, 64, 73, 77, 81, 85, 89, 93, 97, 106, 110,

124, 128, 137, 141, 146, 151, 155, 159, 163, 167, 171, 175, 179, 183, 187, 191, 195, 200, 204,

208, 221, 225, 234, 243, 249, 255, 259, 263, 267, 271, 280, 284, 293, 297, 301, 305, 309, 313,

317, 321, 326, 331, 335, 339, 343, 347, 351, 355, 360, 364, 368, 372, 376, 380, 384, 388, 392,

396, 400, 404, 408, 412, 416, 420, 424, 428, 432, 436, 440, 444, 449, 454, 458, 463, 467, 471,

475, 479, 483, 487, 504, 508, 512, 516, 525, 529, 538, 542, 546, 555, 559, 563, 568, 572, 576,

580, 584, 588, 592, 596, 600, 604, 630; Answer ¶¶ 60, 64, 73, 77, 81, 85, 89, 93, 97, 106, 110,

124, 128, 137, 141, 146, 151, 155, 159, 163, 167, 171, 175, 179, 183, 187, 191, 195, 200, 204,

208, 221, 225, 234, 243, 249, 255, 259, 263, 267, 271, 280, 284, 293, 297, 301, 305, 309, 313,

317, 321, 326, 331, 335, 339, 343, 347, 351, 355, 360, 364, 368, 372, 376, 380, 384, 388, 392,

396, 400, 404, 408, 412, 416, 420, 424, 428, 432, 436, 440, 444, 449, 454, 458, 463, 467, 471,

475, 479, 483, 487, 504, 508, 512, 516, 525, 529, 538, 542, 546, 555, 559, 563, 568, 572, 576,

580, 584, 588, 592, 596, 600, 604, 630.

    5.    In compliance with SMCRA, *see* 30 U.S.C. § 1268(c), OSMRE served NOPAs

for each NOV and cessation order identified in the Complaint on the appropriate company.

Compl. ¶¶ 61, 65, 74, 78, 82, 86, 90, 94, 98, 107, 111, 125, 129, 138, 142, 147, 152, 156, 160,

164, 168, 172, 176, 180, 184, 188, 192, 196, 201, 205, 209, 222, 226, 235, 244, 250, 256, 260,

264, 268, 272, 281, 285, 294, 298, 302, 306, 310, 314, 318, 322, 327, 332, 336, 340, 344, 348,

352, 356, 361, 365, 369, 373, 377, 381, 385, 389, 393, 397, 401, 405, 409, 413, 417, 421, 425,

429, 433, 437, 441, 445, 450, 455, 459, 464, 468, 472, 476, 480, 484, 488, 505, 509, 513, 517,

526, 530, 539, 543, 547, 556, 560, 564, 569, 573, 577, 581, 585, 589, 593, 597, 601, 605;

Answer ¶¶ 61, 65, 74, 78, 82, 86, 90, 94, 98, 107, 111, 125, 129, 138, 142, 147, 152, 156, 160,

164, 168, 172, 176, 180, 184, 188, 192, 196, 201, 205, 209, 222, 226, 235, 244, 250, 256, 260,

264, 268, 272, 281, 285, 294, 298, 302, 306, 310, 314, 318, 322, 327, 332, 336, 340, 344, 348,

352, 356, 361, 365, 369, 373, 377, 381, 385, 389, 393, 397, 401, 405, 409, 413, 417, 421, 425, 429, 433, 437, 441, 445, 450, 455, 459, 464, 468, 472, 476, 480, 484, 488, 505, 509, 513, 517, 526, 530, 539, 543, 547, 556, 560, 564, 569, 573, 577, 581, 585, 589, 593, 597, 601, 605.

6.      For 103 of the NOPAs, the Defendant company did not timely administratively contest the proposed assessment.  Compl. ¶¶ 62, 66, 75, 79, 83, 87, 91, 95, 99, 108, 112, 126, 130, 139, 153, 157, 161, 165, 169, 173, 177, 181, 185, 189, 193, 202, 206, 210, 223, 227, 236, 245, 251, 257, 261, 265, 269, 273, 282, 286, 295, 299, 303, 307, 311, 315, 319, 333, 337, 341, 345, 349, 353, 362, 366, 370, 374, 378, 382, 386, 390, 394, 398, 402, 406, 410, 414, 418, 422, 426, 430, 434, 438, 442, 456, 465, 469, 473, 477, 481, 485, 489, 506, 510, 514, 518, 527, 531, 540, 544, 548, 557, 561, 570, 574, 578, 582, 586, 590, 594, 598, 602, 606; Answer ¶¶ 62, 66, 75, 79, 83, 87, 91, 95, 99, 108, 112, 126, 130, 139, 153, 157, 161, 165, 169, 173, 177, 181, 185, 189, 193, 202, 206, 210, 223, 227, 236, 245, 251, 257, 261, 265, 269, 273, 282, 286, 295, 299, 303, 307, 311, 315, 319, 333, 337, 341, 345, 349, 353, 362, 366, 370, 374, 378, 382, 386, 390, 394, 398, 402, 406, 410, 414, 418, 422, 426, 430, 434, 438, 442, 456, 465, 469, 473, 477, 481, 485, 489, 506, 510, 514, 518, 527, 531, 540, 544, 548, 557, 561, 570, 574, 578, 582, 586, 590, 594, 598, 602, 606.

7.      For 10 of the NOPAs, the Defendant company sought an informal conference to administratively contest the penalty pursuant to 30 C.F.R. § 845.18(a).  Compl. ¶¶ 143, 148, 197, 323, 328, 357, 446, 451, 460, 565; Answer ¶¶ 143, 148, 197, 323, 328, 357, 446, 451, 460, 565.

8.      Following each of those informal conferences, pursuant to 30 C.F.R. § 845.18(c), OSMRE served notice of a conference officer action that affirmed the proposed penalty.  Compl. ¶¶ 143, 148, 197, 323, 328, 357, 446, 451, 460, 565; Answer ¶¶ 143, 148, 197, 323, 328, 357, 446, 451, 460, 565.

9.     Following notice of the conference officer's action, the Defendant companies did not further administratively contest the proposed assessments.  Compl. ¶¶ 144, 149, 198, 324, 329, 358, 447, 452, 461, 566; Answer ¶¶ 144, 149, 198, 324, 329, 358, 447, 452, 461, 566.

10.     As permitted by 30 U.S.C. § 1268(a) and 30 C.F.R. § 845.15(a), OSMRE served Premium Coal with daily civil penalties for two cessation orders after determining that Premium Coal had not met the requirements of the cessation orders.  Compl. ¶¶ 247, 253; Answer ¶¶ 247, 253.

11.     Consistent with 30 C.F.R. § 845.20(a), after the period for administrative review, or further administrative review in the case of NOPAs for which Defendants had sought an informal conference, had lapsed, the NOPAs became final orders requiring payment of the penalty amounts.  Compl. ¶¶ 62, 66, 75, 79, 83, 87, 91, 95, 99, 108, 112, 126, 130, 139, 144, 149, 153, 157, 161, 165, 169, 173, 177, 181, 185, 189, 193, 198, 202, 206, 210, 223, 227, 236, 245, 251, 257, 261, 265, 269, 273, 282, 286, 295, 299, 303, 307, 311, 315, 319, 324, 329, 333, 337, 341, 345, 349, 353, 358, 362, 366, 370, 374, 378, 382, 386, 390, 394, 398, 402, 406, 410, 414, 418, 422, 426, 430, 434, 438, 442, 447, 452, 456, 461, 465, 469, 473, 477, 481, 485, 489, 506, 510, 514, 518, 527, 531, 540, 544, 548, 557, 561, 566, 570, 574, 578, 582, 586, 590, 594, 598, 602, 606; Answer ¶¶ 62, 66, 75, 79, 83, 87, 91, 95, 99, 108, 112, 126, 130, 139, 144, 149, 153, 157, 161, 165, 169, 173, 177, 181, 185, 189, 193, 198, 202, 206, 210, 223, 227, 236, 245, 251, 257, 261, 265, 269, 273, 282, 286, 295, 299, 303, 307, 311, 315, 319, 324, 329, 333, 337, 341, 345, 349, 353, 358, 362, 366, 370, 374, 378, 382, 386, 390, 394, 398, 402, 406, 410, 414, 418, 422, 426, 430, 434, 438, 442, 447, 452, 456, 461, 465, 469, 473, 477, 481, 485, 489, 506, 510, 514, 518, 527, 531, 540, 544, 548, 557, 561, 566, 570, 574, 578, 582, 586, 590, 594, 598, 602, 606.

12.     Defendants Premium Coal, National Coal, and S+H Mining did not deposit the penalty amounts into escrow and, to date, Defendants Premium Coal, National Coal, and S+H Mining have not paid any of the debts associated with the civil penalties identified in Count I of the Complaint.  Compl. ¶¶ 634-35; Answer ¶¶ 634-35; *see also* Exhibit D, Defs.' Resp. to Interrog. No. 4 & RFP No. 17.

13.     A chart summarizing the corporate civil penalties sought in Count I is attached as Exhibit A.[7]

## II.     Defendant James C. Justice, III's Unpaid Individual Civil Penalties

14.     Defendant James C. Justice, III ("Defendant Justice") is an owner, controller, and/or agent of National Coal, Premium Coal, and S+H Mining.  Compl. ¶ 20; Answer ¶ 20.

15.     Between 2018 and 2019, OSMRE served Defendant Justice 17 NOPAs notifying him of proposed individual civil penalties.  Compl. ¶¶ 70, 103, 116, 134, 214, 218, 231, 240, 277, 290, 493, 497, 501, 522, 535, 552; Answer ¶¶ 70, 103, 116, 134, 214, 218, 231, 240, 277, 290, 493, 497, 501, 522, 535, 552.[8]

16.     Before serving each NOPA, OSMRE first notified Defendant Justice that it had issued a cessation order to the relevant company and that he, as President, Director, and/or Managing Member of the company, may be personally liable for individual civil penalties as a result of the company's violation.  Compl. ¶¶ 68, 101, 114, 132, 212, 216, 229, 238, 275, 288,

---

[7]  The 115 penalties in Exhibit A include the penalties associated with the 63 NOVs and 50 cessation orders identified in paragraph 2 above and the 2 daily civil penalties identified in paragraph 10.

[8] While the Complaint identified 18 individual civil penalties, the United States seeks summary judgment on only 17 individual civil penalties.  The United States does not seek summary judgment on I19-090-000-028, *see* Compl. ¶¶ 121-23, and hereby voluntarily dismisses its claims as to that penalty.

491, 495, 499, 520, 533, 550; Answer ¶¶ 68, 101, 114, 132, 212, 216, 229, 238, 275, 288, 491, 495, 499, 520, 533, 550.

17.     Consistent with 30 C.F.R. §§ 846.12(b) and 846.17(a), at least 30 days after issuing the relevant cessation order, OSMRE served Defendant Justice with each NOPA for individual civil penalties.  Compl. ¶¶ 70, 103, 116, 134, 214, 218, 231, 240, 277, 290, 493, 497, 501, 522, 535, 552; Answer ¶ 70, 103, 116, 134, 214, 218, 231, 240, 277, 290, 493, 497, 501, 522, 535, 552.

18.     In each NOPA, OSMRE cited Defendant Justice for willfully and knowingly authorizing, ordering, or carrying out the Defendant company's failure or refusal to timely comply with the relevant cessation order.  Compl. ¶¶ 69, 102, 115, 133, 213, 217, 230, 239, 276, 289, 492, 496, 500, 521, 534, 551; Answer ¶¶ 69, 102, 115, 133, 213, 217, 230, 239, 276, 289, 492, 496, 500, 521, 534, 551.

19.     Defendant Justice did not timely petition for administrative review of any of the 17 NOPAs for individual civil penalties as permitted under 30 C.F.R. § 846.17(b)(1).  Compl. ¶¶ 71, 104, 117, 135, 215, 219, 232, 241, 278, 291, 494, 498, 502, 523, 536, 553; Answer ¶¶ 71, 104, 117, 135; Exhibit D, Defs.' Resp. to RFA Nos. 3-15.

20.     In response to 9 of the NOPAs, Defendant Justice entered into an abatement agreement with OSMRE as permitted under 30 C.F.R. § 846.17(b)(2).  Compl. ¶¶ 215, 219, 241, 278, 494, 498, 502, 523, 536; Exhibit G, Abatement Agreements; Exhibit K, Decl. of Darrell Taylor ¶ 9.

21.     For the other 8 NOPAs, Defendant Justice did not enter into an abatement agreement with OSMRE.  Compl. ¶¶ 71, 104, 117, 135, 232, 291, 553; Answer ¶¶ 71, 104, 117, 135; Exhibit K, Decl. of Darrell Taylor ¶ 8.[9]

22.     By operation of 30 C.F.R. § 846.17(b), the 8 NOPAs for which Defendant Justice did not enter into an abatement agreement with OSMRE became final orders requiring payment of the individual civil penalty amount 30 days after service of the NOPA.  Compl. ¶¶ 71, 104, 117, 135, 232, 291, 553; Answer ¶¶ 71, 104, 117, 135; Exhibit H, Individual Civil Penalty ("ICP") Final Orders.

23.     For the 9 NOPAs for which Defendant Justice entered into an abatement agreement with OSMRE, Defendant Justice did not comply with the terms of the abatement agreement.  Compl. ¶¶ 215, 219, 241, 278, 494, 498, 502, 523, 536; Exhibit B, Table of ICPs; Exhibit H, ICP Final Orders; Exhibit I, Inspection Reports; Exhibit K, Decl. of Darrell Taylor ¶ 9.  As a result of Defendant Justice's non-compliance with the abatement agreements for each of these 9 NOPAs, OSMRE issued a final order requiring payment of the individual civil penalty

---

[9] To the extent Defendants' discovery responses suggest that Defendant Justice may have entered into an abatement agreement for certain of these NOPAs, *see* Exhibit D, Defs.' Resp to RFP Nos. 27-30, they are incorrect.  The documents attached to Defendants' discovery responses are 2021 reclamation agreements entered into by particular companies.  They are not abatement agreements entered into by Defendant Justice to address the 2018 and 2019 individual civil penalties sought in this case.  Instead, these later agreements were signed well after final orders had issued on the individual civil penalty NOPAs from 2018 and 2019 and show only that many of the underlying violations remained unabated years later.  Moreover, to the extent Defendants' discovery responses suggest that they reached an agreement with OSMRE whereby compliance with these 2021 reclamation agreements would eliminate certain individual civil penalties assessed against Defendant Justice, they are also incorrect.  OSMRE never reached such an agreement with Defendants as expressly and contemporaneously clarified by the U.S. Department of the Interior's Solicitor's Office.  Exhibit J, January 12, 2021 Email from Emily Morris, Assistant Solicitor, U.S. Department of the Interior, to Steve Ball, Vice President and General Counsel, Bluestone.

amount consistent with 30 C.F.R. § 846.18(c).  Compl. ¶¶ 215, 219, 241, 278, 494, 498, 502, 523, 536; Exhibit H, ICP Final Orders.

24.     To date, Defendant Justice has not paid any of the debts associated with the individual civil penalties identified in Count II of the Complaint.  Compl. ¶¶ 72, 105, 118, 136, 220, 233, 242, 279, 292, 503, 524, 537, 554; Exhibit D, Defs.' Resp. to Interrog. No. 4 & RFP No. 17.

25.     A chart summarizing the individual civil penalties sought in Count II is attached as Exhibit B.

### STANDARD OF REVIEW

A party seeking summary judgment has the initial burden of establishing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247–48.  A fact is material only if it "could determine the outcome of a case."  *Adams v. Am. Optical Corp.*, 979 F.3d 248, 254 (4th Cir. 2020).  An issue is genuine "if the evidence offered is such that a reasonable jury might return a verdict for the non-movant."  *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020).

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings and may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  *Richardson v. Clarke*, 52 F.4th 614, 620 (4th Cir. 2022).  Instead, the nonmoving party must set forth specific facts showing that a

genuine issue of material fact exists through use of affidavits and other evidence. *Anderson*, 477

U.S. at 257 (holding the non-moving party "must present affirmative evidence in order to defeat

a properly supported motion for summary judgment"). The evidence relied on must meet "the

substantive evidentiary standard of proof that would apply at a trial on the merits." *Id.* at 252.

Thus, the nonmoving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (4th Cir. 1986). "The record must instead permit the conclusion that 'reasonable minds

could differ' on the issue." *Adams*, 979 F.3d at 255.

## ARGUMENT

The Court should grant summary judgment in favor of the United States for three

reasons. First, Defendants' Answer admits the allegations in Count I, demonstrating on the face

of the pleadings that there is no dispute those corporate penalty debts are owed. Second,

although Defendants' Answer denies certain allegations in Count II regarding the individual civil

penalties, the United States' undisputed documentary evidence, in combination with Defendants'

discovery responses, demonstrates the penalties in Count II are due and owing. Last,

Defendants' affirmative defenses fail as a matter of law. To start, Defendants have waived any

right to contest the amount of the corporate penalties assessed by OSMRE and have conceded

liability as to the individual civil penalties as a matter of law. Notwithstanding those waivers

and concessions, while Defendants purportedly reserve the right to assert defenses based on

insufficiency of notice and service, Defendants have already admitted specific notice and service

allegations throughout their Answer, thus negating any such defense. And while Defendants

assert that certain claims are barred by the statute of limitations, in fact, the United States filed its

Complaint within the statute of limitations for all penalties sought. Finally, while Defendants

allege that the individual civil penalties sought in Count II violate the Excessive Fines Clause of the Eighth Amendment, those penalties are neither "fines" under the Eighth Amendment nor excessive.  Therefore, the Court should grant the United States' Motion for Summary Judgment.

## I.      Defendants Admit the Allegations in Count I.

The United States is entitled to summary judgment as to Count I because Defendants have admitted in their Answer all allegations that establish their liability for the corporate civil penalties sought in that Count.

Count I seeks to recover $4,376,328 in total unpaid corporate civil penalties—arising from 63 NOVs, 50 cessation orders, and 2 daily civil penalties—owed by Premium Coal, National Coal, and S+H Mining, as well as interest, late payment penalties, and administrative expenses.  Compl. ¶¶ 629-39.  Defendants admitted all but one of the allegations in Count I, *see* Answer ¶¶ 631-637, 639, as well as all the underlying factual allegations for every corporate penalty sought, *see id.* ¶¶ 60-607.[10]  Thus, for every corporate civil penalty, Defendants have admitted that:

- OSMRE served the company with the relevant NOV or cessation order.

- The company failed to timely administratively contest the NOV or cessation order.

- OSMRE served the company with a NOPA.

---

[10] The only allegation in Count I that Defendants denied goes to the timeliness of the United States' claim for corporate civil penalties.  Compl. ¶ 638; Answer ¶ 638.  As discussed below, that defense fails as a matter of law.  *Infra* pp. 32-34.

- The company either did not administratively contest the proposed assessment or sought an informal conference but did not further contest the proposed assessment after receipt of the conference officer's action.

- As a result, the NOPA became a final order requiring the company to pay the relevant penalty amount, as well as additional interest, late payment penalties, and administrative expenses.

- The company never deposited the amount owed into escrow and, thus, waived all legal rights to contest the violation or the amount of the penalty.

- The company has not paid the debt to the United States.

Defendants' admissions establish that there is no dispute of material fact as to the penalties sought in Count I, and the admitted factual allegations demonstrate that the United States is owed payment under SMCRA.  Moreover, these same facts establish, for each penalty sought, that Defendants have waived all legal rights to contest the existence of the violation or the amount of the penalty.  30 U.S.C. § 1268(c); *see also infra* pp. 27-29.  Therefore, the Court should enter summary judgment for the United States on Count I.

## II.  Defendant Justice Indisputably Owes the Individual Civil Penalties Sought in Count II.

Count II alleges Defendant Justice owes $1,415,441 in unpaid individual civil penalties, plus interest, late payment penalties, and administrative expenses.  The pleadings, combined with Defendants' discovery responses, demonstrate that there is no material dispute of fact as to these penalties, and Defendant Justice owes them as a matter of law.

These individual civil penalties originate from cessation orders that OSMRE issued to National Coal, Premium Coal, and S+H Mining.  Compl. ¶¶ 68, 101, 114, 119, 132, 212, 216, 229, 238, 275, 288, 491, 495, 499, 520, 533, 550; Answer ¶¶ 68, 101, 114, 119, 132, 212, 216,

229, 238, 275, 288, 491, 495, 499, 520, 533, 550.  When the companies did not timely comply

with the cessation orders, OSMRE served Defendant Justice with 17 NOPAs as an owner,

controller, and/or agent of National Coal, Premium Coal, and S+H Mining, notifying Defendant

Justice of proposed individual civil penalties for the companies' failure to comply with the

cessation orders.  Compl. ¶¶ 69-70, 102-03, 115-16, 133-34, 213-14, 217-18, 230-31, 239-40,

276-77, 289-90, 492-93, 496-97, 500-01, 521-22, 534-35, 551-52; Answer ¶¶ 69-70, 102-03,

115-16, 133-34, 213-14, 217-18, 230-31, 239-40, 276-77, 289-90, 492-93, 496-97, 500-01, 521-

22, 534-35, 551-52.

    Defendant Justice did not petition for administrative review of any of the NOPAs.

Compl. ¶¶ 71, 104, 117, 135, 215, 219, 232, 241, 278, 291, 494, 498, 502, 523, 536, 553;

Answer ¶¶ 71, 104, 117, 135; *see also* Exhibit D, Defs.' Resp. to RFA Nos. 3-15.  By operation

of law, that failure to administratively contest any of the NOPAs establishes Defendant Justice's

liability for these individual civil penalties.  43 C.F.R. § 4.1302(b); *see also* Compl. ¶ 50;

Answer ¶ 50.  In light of that liability, Defendant Justice's only means of avoiding the penalties

was to enter into and comply with an abatement agreement.

    For 8 of the 17 individual civil penalties sought in the Complaint, Defendant Justice did

not enter into an abatement agreement with OSMRE.  Exhibit K, Decl. of Darrell Taylor ¶ 8.

Therefore, Defendant Justice owed payment on each of those 8 penalties 30 days after Defendant

Justice was served with the relevant NOPA.  30 C.F.R. §§ 846.17(b), 846.18(a).  Because

Defendant Justice has not paid any portion of any of these penalties, *see* Exhibit D, Defs.' Resp.

to Interrog. No. 4 & RFP No. 17, he continues to owe them.

    For the remaining 9 of the 17 individual civil penalties sought in the Complaint,

Defendant Justice entered into abatement agreements with OSMRE.  Exhibit G, Abatement

Agreements.  However, Defendant Justice did not comply with the terms of any of these abatement agreements.  *See* Exhibit B, Table of ICPs; Exhibit H, ICP Final Orders; Exhibit K, Decl. of Darrell Taylor ¶ 9.  As a result, OSMRE issued final orders requiring payment of the individual penalty amounts.  Exhibit H, Final Orders; 30 C.F.R. § 846.18(c).  Because Defendant Justice has not paid any portion of any of these penalties, *see* Exhibit D, Defs.' Resp. to Interrog. No. 4 & RFP No. 17, he continues to owe them.

As evidenced by Defendants' Answer and responses to discovery requests, as well as the United States' documentary evidence, Defendant Justice owes the individual civil penalties and has not made any payments toward them.  As such, summary judgment should be granted for the United States on Count II.

## III.   Defendants' Affirmative Defenses Fail as a Matter of Law.

Defendants raise three affirmative defenses in their Answer: (1) OSMRE's compliance with the notice and service provisions of SMCRA; (2) the applicable 5-year statute of limitations; and (3) the Eighth Amendment's Excessive Fines Clause.  Answer at 30-31. Defendants appear to assert the first and second of these defenses against both the corporate penalties sought in Count I and the individual civil penalties sought in Count II.  However, they assert the third defense under the Eighth Amendment only as to the individual civil penalties sought in Count II.  *See* Exhibit D, Defs.' Resp. to Interrog. 3.

Defendants' defenses fail for several independent reasons.  First, Defendants have waived their right to contest both the existence of the underlying violations and the amounts of the corporate civil penalties per 30 U.S.C. § 1268(c) and have conceded liability as to the individual civil penalties per 43 C.F.R. § 4.1302(b).  But even beyond these waivers and concessions, the pleadings establish that OSMRE fulfilled SMCRA's notice and service provisions and that the

26

United States filed suit within the relevant statute of limitations.  And the Eighth Amendment

defense as to the individual civil penalties fails as a matter of law because the penalties sought in

the Complaint are not "fines" subject to the Excessive Fines Clause and, even if they were, they

are not "excessive" under the established meaning of that term because they are not grossly

disproportional to the gravity of the underlying violations.

### A.    Defendants Have Waived Any Right to Contest the Underlying Violations or the Amount of the Corporate Penalties and Have Conceded Liability as to the Individual Civil Penalties.

As a threshold matter, Defendants have waived any right to contest the underlying

violations or the amount of the corporate penalties assessed and sought in Count I and have

conceded liability as to the individual civil penalties sought in Count II.

As to the corporate penalties sought in Count I, SMCRA provides that a "person charged

with [a] penalty shall [] have thirty days to pay the proposed penalty in full or, if the person

wishes to contest either the amount of the penalty or the fact of the violation, forward the

proposed amount to the Secretary for placement in an escrow account."  30 U.S.C. § 1268(c).

"Failure to forward the money to the Secretary within thirty days shall result in a waiver of all

legal rights to contest the violation or the amount of the penalty."  *Id.*; *see also* 43 C.F.R.

§ 4.1152(c)-(d).

Here, Defendants have admitted that none of the companies paid or deposited into escrow

any of the proposed assessment amounts sought in Count I.  Compl. ¶¶ 634-35; Answer ¶¶ 634-

35; Exhibit D, Defs.' Resp. to Interrog. No. 4 & RFP No. 17.  Defendants have also admitted that

they have therefore "waived all legal rights to contest the violations or the amount of the

corporate civil penalties in this proceeding."  Compl. ¶ 636; Answer ¶ 636.  Because there are no

factual disputes as to the corporate civil penalties sought in Count I and Defendants have waived

all legal rights to contest the violation or the amount of the penalty, the United States is entitled

to judgment as a matter of law on Count I.  *See United States v. Kobaly*, No. CIV.A. 83-2334, 1987 WL 18820, at *2 (W.D. Pa. Apr. 7, 1987) ("The Court concludes that, in light of defendant's waiver of his right to contest the $22,500 civil penalty, there are no material facts in dispute and the government is entitled to judgment in its favor as a matter of law with respect to that penalty."); *United States v. Cupps*, No. 6:05-CV-0380-VEH, 2006 WL 8437966, at *11 (N.D. Ala. Apr. 17, 2006) ("By operation of law, defendant Cupps has waived his right to contest the amount of the civil penalty assessments and he is barred from now contesting the amount of the civil penalty assessments."); *see also United States v. Finley*, 835 F.2d 134, 134, 137-38 (6th Cir. 1987) (affirming district court's determination that defendant was generally precluded from challenging a civil penalty due to his failure to exhaust SMCRA's administrative remedies pursuant to 30 U.S.C. § 1268(c)).[11]

As to the individual civil penalties sought in Count II, the federal regulations state: "Failure to file a petition for [administrative] review" with the U.S. Department of the Interior's Office of Hearings and Appeals within 30 days of service of the notice of proposed individual civil penalty assessment "shall be deemed an admission of liability by the individual, whereupon the notice of proposed assessment shall become a final order of the Secretary and any tardy petition shall be dismissed."  43 C.F.R. § 4.1302; *see also* Special Rules Applicable to Surface Coal Mining Hearings and Appeals, 53 Fed. Reg. 8752-01, 8752-53 (Mar. 17, 1988) (declining to revise 43 C.F.R. § 4.1302 to provide additional "flexibility" for individuals subject to individual civil penalties).

---

[11] Multiple circuit courts have upheld the constitutionality of 30 U.S.C. § 1268(c)'s waiver provision.  *Blackhawk Mining Co. v. Andrus*, 711 F.2d 753, 757-58 (6th Cir. 1983); *B & M Coal Corp. v. Off. of Surface Min. Reclamation & Enf't*, 699 F.2d 381, 385-86 (7th Cir. 1983); *Graham v. Off. of Surface Mining Reclamation & Enf't*, 722 F.2d 1106, 1110-14 (3d Cir. 1983).

Here, Defendant Justice did not file a petition for administrative review within 30 days of service of the NOPA for any of the individual civil penalties sought in Count II.  Compl. ¶¶ 71, 104, 117, 135, 215, 219, 232, 241, 278, 291, 494, 498, 502, 523, 536, 553; Answer ¶¶ 71, 104, 117, 135; Defs' Resp. to RFA Nos. 3-15.  Therefore, by operation of law, Defendant Justice has conceded liability as to the individual civil penalties and cannot now contest liability as a defense to this lawsuit.

## B.   Defendants' Admissions Foreclose any Genuine Issue of Material Fact Concerning Adequacy of Notice and Service.

Defendants assert that their "admissions and concessions" in the Answer "are premised upon the United States' ability to establish compliance with the notice and service provisions" of SMCRA.  Answer at 30.  But this is no defense because the pleadings themselves establish that the United States has complied with SMCRA's notice and service provisions; Defendants have admitted the United States' allegations describing notice and service as to *all* of the underlying violations and penalties sought in Counts I and II.

In each of the paragraphs of the Complaint where the United States alleged notice and service relevant to a corporate civil penalty or individual civil penalty, Defendants admitted the allegations.[12]  More specifically, for every NOV and cessation order, the United States alleged

---

[12] Service of underlying NOV or cessation order: Answer ¶¶ 28, 60, 64, 73, 77, 81, 85, 89, 93, 97, 106, 110, 124, 128, 137, 141, 146, 151, 155, 159, 163, 167, 171, 175, 179, 183, 187, 191, 195, 200, 204, 208, 221, 225, 234, 243, 249, 255, 259, 263, 267, 271, 280, 284, 293, 297, 301, 305, 309, 313, 317, 321, 326, 331, 335, 339, 343, 347, 351, 355, 360, 364, 368, 372, 376, 380, 384, 388, 392, 396, 400, 404, 408, 412, 416, 420, 424, 428, 432, 436, 440, 444, 449, 454, 458, 463, 467, 471, 475, 479, 483, 487, 504, 508, 512, 516, 525, 529, 538, 542, 546, 555, 559, 563, 568, 572, 576, 580, 584, 588, 592, 596, 600, 604.  Service of daily civil penalties: Answer ¶¶ 247, 253.  Service of NOPA for corporate civil penalties: Answer ¶¶ 61, 65, 74, 78, 82, 86, 90, 94, 98, 107, 111, 125, 129, 138, 142, 147, 152, 156, 160, 164, 168, 172, 176, 180, 184, 188, 192, 196, 201, 205, 209, 222, 226, 235, 244, 250, 256, 260, 264, 268, 272, 281, 285, 294, 298, 302, 306, 310, 314, 318, 322, 327, 332, 336, 340, 344, 348, 352, 356, 361, 365, 369, 373, 377, 381, 385, 389, 393, 397, 401, 405, 409, 413, 417, 421, 425, 429, 433, 437, 441, 445, 450, 455,

that OSMRE "served" the NOV or cessation order on the relevant company on or around a date

certain. *See, e.g.*, Compl. ¶¶ 60, 64.  For every NOPA for a corporate civil penalty and for every

daily civil penalty, the United States alleged that OSMRE "served" the NOPA or daily civil

penalty on the relevant Defendant company on or around a date certain.  *See, e.g.*, *id.* ¶¶ 61, 65,

247, 253.  And for every NOPA for an individual civil penalty, the United States alleged that

OSMRE "served" the NOPA on Defendant Justice on or around a date certain.  *See, e.g.*, *id.* ¶¶

70, 103.  Defendants admitted each and every one of these allegations.  *See, e.g.*, Answer ¶¶ 60,

61, 64, 65, 70, 103, 247, 253.

"The general rule is that 'a party is bound by the admissions of his pleadings.'"  *Lucas v.

Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) (quoting *Best Canvas Products & Supplies v. Ploof

Truck Lines*, 713 F.2d 618, 621 (11th Cir.1983)).  A concession in a party's pleadings is a

"judicial admission," which is "'conclusive in the case' unless the court allows it to be

withdrawn."  *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) (citation

omitted); *see also Korangy v. U.S. F.D.A.*, 498 F.3d 272, 275 (4th Cir. 2007) (holding party

cannot challenge an issue of fact that it previously admitted); *New Amsterdam Cas. Co. v.

Waller*, 323 F.2d 20, 24 (4th Cir. 1963) ("A judicial admission is usually treated as absolutely

binding . . . .").  Because Defendants have admitted that OSMRE served the relevant company or

individual for every NOV, cessation order, daily civil penalty, and NOPA in the Complaint, there

is no genuine issue of material fact concerning the United States' compliance with the relevant

notice and service requirements.

---

459, 464, 468, 472, 476, 480, 484, 488, 505, 509, 513, 517, 526, 530, 539, 543, 547, 556, 560,
564, 569, 573, 577, 581, 585, 589, 593, 597, 601, 605.  Service of NOPA for individual civil
penalties: Answer ¶¶ 70, 103, 116, 134, 214, 218, 231, 240, 277, 290, 493, 497, 501, 522, 535,
552.

Even if Defendants' admission of all relevant factual allegations were not dispositive, however, the limited scope of Defendants' discovery responses forecloses any defense of improper service.  Specifically, Interrogatory No. 1 requested that Defendants identify each specific penalty for which they assert a defense of improper notice and/or service, and further requested that Defendants identify all facts and evidence supporting that defense.  Exhibit C, Interrog. No. 1.  In response, Defendants generically stated that "on certain occasions notices of violations and resulting penalties have not been properly served on the respective Defendants"; notably, the response did not identify *any* specific violations or penalties for which they allege notice and/or service were improper.  *See* Exhibit D, Interrog. No. 1 & Defs.' Resp. to Interrog. No. 1; Fed. R. Civ. P. 33(b)(3) (requiring that a party respond to interrogatories "fully").  Instead, Defendants rely entirely on a letter, dated October 7, 2020.  *See id*. ("The facts supporting this claim are outlined in the letter.")  But that letter also does not identify any specific violations or penalties for which notice and/or service were allegedly improper.  Exhibit E, DEF000085-86.  At most, the letter asserts an opinion that notice must be served on each company's onsite authorized representative.  But this legal contention is plainly inconsistent with 30 C.F.R. § 843.14(a), which provides a menu of options for effective service, including "by certified mail or by hand to the permittee or his or her designated agent, or by any means consistent with the rules governing service of a summons and complaint under rule 4 of the Federal Rules of Civil Procedure."  *Id.* § 843.14(a)(2).

Because Defendants admit each of the United States' allegations establishing notice and service relevant to a corporate civil penalty or individual civil penalty, and because Defendants declined to identify in their discovery responses any instance where notice or service was

improper, Defendants cannot identify any genuine issue of material fact with respect to the adequacy of notice and service.

   C.     **The United States' Claims Are Not Barred by the Statute of Limitations.**

Defendants also assert in their Answer that "[c]ertain claims may be barred by the applicable statute of limitations."  Answer at 30.  This defense fails because the pleadings establish that the United States has filed within the applicable limitations period.

Because SMCRA does not contain a limitations period for the collection of penalties, the applicable statute of limitations is the five-year limitations period contained in 28 U.S.C. § 2462.  *See 3M Co. v. Browner*, 17 F.3d 1453, 1455 (D.C. Cir. 1994) (describing 28 U.S.C. § 2462 as "generally applicable to civil fines and penalties" where a statute of limitations is not otherwise provided by law).  Under Section 2462, "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued."

The United States' corporate civil penalty claims in Count I accrued when the window for the permittee to timely request a formal hearing contesting the penalty closed, thereby causing the NOPA to become a "final order of the Secretary" pursuant to which the penalty became "due and payable."  30 C.F.R. § 845.20(a).  The United States' individual civil penalty claims in Count II also accrued once the NOPAs became final orders of the Secretary, upon which payment is "due."  30 C.F.R. §§ 846.17(b), 846.18(a), (c); *see also* 30 U.S.C. § 1268(b); *Arch Min. Corp. v. Babbitt*, 894 F. Supp. 974, 984 (S.D.W. Va. 1995), *aff'd,* 104 F.3d 660, 669 (4th Cir. 1997) (finding claim for payment of civil penalty under SMCRA accrued when penalty took effect after the permittee failed to appeal either the violation or the proposed penalty assessment); *United States v. McCune*, 763 F. Supp. 916, 918 (S.D. Ohio 1989) (holding claim for payment of civil penalty under SMCRA accrued upon issuance of final order); *United States*

*v. Cupps*, No. 6:05CV00380-VEH, 2006 WL 8437965, at *6 & n.5 (N.D. Ala. Jan. 10, 2006) (holding the "weight of caselaw" favors accrual of a claim for civil penalties upon the Secretary's issuance of a final order).

This timeline for accrual is consistent with recent Fourth Circuit case law clarifying that a claim accrues under Section 2462 when a "plaintiff has a complete and present cause of action," which includes any statutory prerequisites such as providing defendants with notice of the proposed penalty and opportunity to administratively contest the penalty. *FERC v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 899 (4th Cir. 2020). Here, SMCRA is clear that a civil penalty may not be assessed until after the permittee "has been given an opportunity for a public hearing" on the proposed penalty. 30 U.S.C. § 1268(b); *see also* 30 C.F.R. §§ 845.20 (corporate penalties), 846.17 (individual civil penalties). If a permittee or individual forgoes a timely hearing as Defendants did here, "a civil penalty shall be assessed by the Secretary *after* the Secretary . . . has issued an order requiring that the penalty be paid," *i.e.*, a final order. 30 U.S.C. § 1268(b) (emphasis added); *see also* 30 C.F.R. §§ 845.20(a) (corporate penalties), 846.18(a) (individual civil penalties).

Because none of the Defendant companies requested a formal hearing on any of the penalties sought in Count I, as Defendants admitted in their Answer, *see, e.g.*, Compl. ¶¶ 273, 323-24; Answer ¶¶ 273, 323-24, the NOPAs for the corporate civil penalties became final orders 30 days after service if no informal conference was requested, or, if an informal conference was requested, 30 days after the conference officer's action. 30 C.F.R. §§ 845.19(a), 845.20(a). Likewise, because Defendant Justice did not timely petition for administrative review of any of

the individual civil penalties sought in Count II,[13] the individual civil penalty NOPAs become final orders 30 days after service, unless Defendant Justice entered into an abatement agreement with OSMRE within that 30 day period.  30 C.F.R. §§ 846.17(b), 846.18(a).  For the individual civil penalties for which Defendant Justice entered into an abatement agreement, OSMRE issued final orders after Defendant Justice failed to comply with the terms of the abatement agreement. 30 C.F.R. § 846.18(c); *see also supra* ¶¶ 20-23.

In the Complaint, the United States set forth the date certain on which every NOPA "became the agency's final order requiring" the relevant Defendant "to pay the penalty amount." *See, e.g.*, Compl. ¶¶ 62, 66, 71.  Defendants admitted every one of these allegations for the corporate civil penalties sought in Count I, *see, e.g.*, Answer ¶¶ 62, 66, 71.  The earliest final order date for any of the corporate penalties is May 31, 2018.  *See id.* ¶¶ 62, 206, 223, 261, 378, 473; *see also* Exhibit A.  Because the United States filed its Complaint on May 30, 2023—and thus within five years of the earliest final order—each of the United States's corporate penalty claims was filed within the statute of limitations.

While Defendants denied some of these allegations in their Answer as to the individual civil penalties sought in Count II, the evidence attached to this motion demonstrates that the earliest final order date for any of the individual civil penalties was in October 2018.  *See* Compl. ¶ 232; Exhibit B; Exhibit H, Final Orders.  Here again, because the United States filed its Complaint on May 30, 2023—and, thus, within five years of the earliest final order—each of the United States's individual civil penalty claims was filed within the statute of limitations.

---

[13] *See* Answer ¶¶ 71, 104, 117, 135; Exhibit D, Defs.' Resp. to RFA Nos. 3-15.

Because the United States filed its Complaint on May 30, 2023, none of the penalties sought in the Complaint is barred by the statute of limitations.

**D.      The Individual Civil Penalties Do Not Violate the Excessive Fines Clause of the Eighth Amendment.**

Finally, Defendants assert that the individual civil penalties sought in the Complaint violate the Excessive Fines Clause of the Eighth Amendment.  Answer at 31; Exhibit D, Defs.' Resp. to Interrog. No. 3.  This defense fails for two independent reasons.  First, the Excessive Fines Clause is inapplicable to the SMCRA penalties assessed here.  Second, the individual civil penalties are not excessive because they are far below the statutory maximums, were assessed for serious violations that caused or threatened real harm, and respond to Defendants' consistent, repeated refusal over a period of years to comply with federal law.

**i.      The Excessive Fines Clause does not apply to the civil penalties assessed here.**

At the threshold, the Excessive Fines Clause does not even apply to the individual civil penalties sought in the Complaint.  As the Supreme Court has explained, the Eighth Amendment's two clauses—the Excessive Fines Clause and the Cruel and Unusual Punishment Clause—"taken together, . . . place 'parallel limitations' on 'the power of those entrusted with the criminal-law function of government."  *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (quoting *Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.*, 492 U.S. 257, 263 (1989)).  The Excessive Fines Clause, in particular, "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"  *Id.* (quoting *United States v. Bajakajian*, 524 U.S. 321, 327 (1998)).  In determining whether a particular fine constitutes "punishment," the Supreme Court has consistently considered whether the fine was tied in some way to a criminal sanction.  Indeed, all of the Supreme Court's cases applying the Excessive Fines Clause have involved either forfeitures ordered as sanctions for criminal conduct

35

after an adjudication of guilt, *see Bajakajian*, 524 U.S. at 325–26; *Alexander v. United States*, 509 U.S. 544, 547–48 (1993), or civil actions brought after the property owner had already been convicted of a crime, seeking forfeiture of property used in the commission of the crime, *see Timbs*, 139 S. Ct. at 686; *Austin v. United States*, 509 U.S. 602, 605 (1993).

In considering this case law, the Fourth Circuit noted that, in *Austin*, *Alexander*, and *Bajakajian*, the Supreme Court "consistently focused on whether the forfeiture stemmed, at least in part, from the property owner's criminal culpability." *United States v. Jalaram, Inc.*, 599 F.3d 347, 354 (4th Cir. 2010). The Fourth Circuit went on to hold that the "Supreme Court's Excessive Fines Clause cases" require a court to look at "whether the challenged forfeiture resulted at least in part from the criminal activity of the property owner," which, in turn, requires examining "whether the forfeiture was 'imposed at the culmination of a criminal proceeding,' 'requires conviction of an underlying felony,' and 'cannot be imposed upon an innocent [person] . . . but only upon a person who has himself been convicted of a' crime." *Id.* (quoting *Bajakajian*, 524 U.S. at 328); *see also Thomas v. Comm'r*, 62 F.3d 97, 103 (4th Cir. 1995) (finding Excessive Fines Clause does not apply to civil tax penalty and noting the plaintiff "cannot identify any portion of the *Austin* opinion which suggests that the Court intended for its Eighth Amendment analysis to extend beyond the civil forfeiture context").[14]

---

[14] Other Fourth Circuit case law in the civil penalty context provides little guidance as those cases predate *Timbs* and bypass the fact that relevant Supreme Court cases share a common thread of criminality absent here. *See U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387-89 (4th Cir. 2015) (assuming without analysis that the Excessive Fines Clause applied to civil penalty under the False Claims Act); *U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 408-09 (4th Cir. 2013) (same, but the defendant had been convicted of a criminal offense arising from the same activities); *Korangy*, 498 F.3d at 277-78 (refusing to decide whether civil penalties imposed under Mammography Quality Standards Act were "fines" within the meaning of the Excessive Fines Clause).

Here, the individual penalties sought in the Complaint are civil in nature and are not tied to any criminal proceedings or alleged criminal conduct.  Thus, the threshold conditions that have led the Supreme Court to treat certain forfeitures as "fines" for purposes of the Excessive Fines Clause are absent here.

### ii.        The individual civil penalties are not excessive.

Even assuming that the individual civil penalties sought in the Complaint constitute "fines" for purposes of the Eighth Amendment, they are not "excessive" and, therefore, must be upheld.  A "fine" subject to the Eighth Amendment "will be found constitutionally excessive only if it is 'grossly disproportional to the gravity of [the] offense.'"  *Korangy*, 498 F.3d at 277 (quoting *Bajakajian,* 524 U.S. at 334).  This test is "by no means onerous" and the instances in which a penalty will satisfy it are "infrequent."  *Bunk*, 741 F.3d at 408.  In applying the grossly disproportional test, courts look to the nature of the activity for which the penalty was assessed, whether the activity was part of a pattern of similar activities, and the harm flowing from the activity.  *See id.*; *Bajakajian,* 524 U.S. at 337-40.  Courts must also be mindful that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian*, 524 U.S. at 336.  The burden to demonstrate that a fine is excessive falls on the party challenging the constitutionality of the fine, here Defendants.  *United States v. Ahmad*, 213 F.3d 805, 816 (4th Cir. 2000).  Defendants have not and cannot meet this burden.

### a.        The individual civil penalties are consistent with SMCRA and far below the statutory maximums.

The individual civil penalties should be upheld because they are within the range specifically set by Congress and, in most cases, are far below the maximum amounts authorized by Congress.  Courts, including the Fourth Circuit, routinely refuse to find a penalty excessive under the Eight Amendment if it is within a statutory range, noting that "there is a strong

presumption of constitutionality where the value of a forfeiture falls within the fine range prescribed by Congress[.]"  *United States v. $134,750 U.S. Currency*, 535 F. App'x 232, 240 (4th Cir. 2013) (quoting *United States v. Malewicka,* 664 F.3d 1099, 1106 (7th Cir. 2011)); *see also, e.g.*, *Korangy*, 498 F.3d at 277-78 (holding fine not excessive where Congress authorized up to $10,000 per violation but the agency only assessed $3,000); *United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014) (noting maximum statutory fine was $250,000, which "far exceed[ed] the requested forfeiture" of $136,601.03); *Newell Recycling Co. v. U.S. E.P.A.*, 231 F.3d 204, 210 (5th Cir. 2000) ("No matter how excessive (in lay terms) an administrative fine may appear, if the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate the Eighth Amendment.").

The individual civil penalties sought here are generally far less than OSMRE could have assessed.  In SMCRA, Congress determined that a civil penalty for violation of a permit or statutory or regulatory condition "shall not exceed $5,000 for each violation."  30 U.S.C. § 1268(a).  OSMRE issued the individual civil penalties sought in this case in 2018 and 2019. As adjusted for inflation (as required by law),[15] the maximum penalty amount for those years was $16,401 and $16,815, respectively.  *See* Civil Monetary Penalty Inflation Adjustments, 83 Fed. Reg. 10,611 (Mar. 12, 2018); Civil Monetary Penalty Inflation Adjustments, 84 Fed. Reg. 10,670 (Mar. 22, 2019).[16]  However, "[e]ach day of continuing violation may be deemed a separate violation for purposes of penalty assessments."  30 U.S.C. § 1268(a).

---

[15] As noted above, *supra* n.2, OSMRE annually adjusts the penalty amounts set forth in SMCRA to account for inflation as required by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701.

[16] Defendants cannot challenge OSMRE's rulemakings establishing these amounts.  Under SMCRA, any challenge to a national rulemaking is subject to judicial review exclusively in U.S.

To determine the amount of a penalty, Congress directed OSMRE to consider "the permittee's history of previous violations at the particular surface coal mining operation; the seriousness of the violation, including any irreparable harm to the environment and any hazard to the health or safety of the public; whether the permittee was negligent; and the demonstrated good faith of the permittee charged in attempting to achieve rapid compliance after notification of the violation."  30 U.S.C. § 1268(a); *see also* 30 C.F.R. § 846.14(a).  The regulations clarify that the cost to abate a violation is an indication of its seriousness.  30 C.F.R. § 846.14(a)(2).  OSMRE calculates individual penalties using a worksheet that accounts for these criteria.  Under the 2018 and 2019 worksheets, OSMRE added $1,640 in 2018 and $1,682 in 2019 per previous cessation order at the particular surface coal mining operation, up to four total cessation orders; an amount to account for the seriousness of the environmental harm, ranging from $0 for no environmental harm to $4,920 in 2018 and $5,045 in 2019 for significant harm; an amount to account for the extent of the damage caused by the violation, ranging from $0 to $2,263 in 2018 and $0 to $2,523 in 2019 for damage contained within the permit area or $2,263 to $4,920 in 2018 and $2,523 to $5,045 in 2019 for damage that extends outside the permit area; and a deduction if the individual has demonstrated good faith in attempting to address the violation. *See, e.g.*, Exhibit F, ICP NOPAs & Worksheets.[17]  The final individual civil penalty is generally the lesser of (1) the penalty calculated via the worksheet multiplied by the total number of days

---

District Court for the District of Columbia and must be filed within 60 days from issuance of the final rule.  30 U.S.C. § 1276(a)(1).

[17] The ICP Worksheets for individual civil penalties I19-090-000-022, I19-090-000-023, I19-090-000-024, and I19-090-000-030 contain typographical errors in the "Individual Civil Penalty (ICP) No." box.  However, the worksheets correctly calculate the individual civil penalties associated with ICPs I19-090-000-022, I19-090-000-023, I19-090-000-024, and I19-090-000-030.

since service of the cessation order that triggered the individual penalty, or (2) the total cost to abate the violation plus ten percent. *Id.*; *see also* OSMRE Directive INE-40 at 7 ("The total ICP penalty amount shall not exceed the estimated cost of abatement plus a 10 percent incentive amount."); 53 Fed. Reg. 3664, 3669 (Feb. 8, 1988) ("OSMRE can base its assessment, as a whole or in part, upon the estimated cost to repair the damage caused by a failure to abate the violation.").

The worksheets for the individual civil penalties at issue here reflect OSMRE's careful consideration of the relevant factors identified by Congress. For example, for I19-090-000-030, OSMRE calculated $0 for environmental harm and $0 for extent of damage because the violation—failure to properly dispose of non-coal waste, namely, fuel leaked by an abandoned excavator on a haul road—had caused "little damage" and the "the damage is confined to the permit area." Exhibit F-16, US_0001836. In contrast, for I18-090-000-018, OSMRE calculated $800 to account for the environmental harm and $2,000 to account for the extent of the damage caused by unmaintained haul road ditches resulting in "uncontrolled water . . . causing erosion to the haul road." Exhibit F-1, US_0000986.

Equally important, the worksheets demonstrate that OSMRE generally assessed amounts far less than it could have under SMCRA. At the time of OSMRE's assessment of the individual civil penalties, the underlying cessation orders had remained unabated for a period of 46 to 297 days from the date of service. Exhibit F, ICP NOPAs & Worksheets. Therefore, as shown in the table below, OSMRE had authority under SMCRA to assess much higher amounts, well into the million dollar range. At the high end, OSMRE in many instances could have assessed a penalty over $2 million, and in one case over $4 million, by relying on its maximum authority under SMCRA (statutory maximum penalty of $16,401 in 2018 or $16,815 in 2019 multiplied by the

days the violation remained unabated since service of the cessation order).  Even using the reduced amounts calculated via its worksheets multiplied by the days the violation remained unabated, OSMRE could have assessed over $1 million in many cases.

Yet, for every individual civil penalty sought here, OSMRE assessed the cost to abate the violation plus a 10 percent incentive because that amount was generally far less than the higher penalty amounts allowed by SMCRA.  Indeed, in many cases, the amount that OSMRE assessed was less than the statutory maximum penalty amount for a single day of a continuing violation (either $16,401 or $16,815), even though every one of these violations remained unabated for far more than one day.

| Individual Civil Penalty | Maximum daily penalty amount | Daily penalty calculated via worksheet | Days between service of failure to abate cessation order and assessment | Maximum possible penalty (max penalty x days) | Daily penalty from worksheet x days | Cost to abate plus 10% | Amount actually assessed |
|---|---|---|---|---|---|---|---|
| I18-090-000-006 | $16,401 | $2,800 | 96 | $1,574,496 | $268,800 | $23,210 | $23,210 |
| I19-090-000-022 | $16,815 | $6,728 | 91 | $1,530,165 | $612,248 | $3,155 | $3,155 |
| I19-090-000-024 | $16,815 | $10,935 | 46 | $773,490 | $503,010 | $4,970 | $4,970 |
| I19-090-000-029 | $16,815 | $6,560 | 113 | $1,853,313 | $741,325 | $16,478 | $16,478 |
| I18-090-000-013 | $16,401 | $7,061 | 180 | $2,952,180 | $1,271,034 | $195,530 | $195,530 |
| I18-090-000-014 | $16,401 | $7,061 | 180 | $2,952,180 | $1,271,034 | $5,380 | $5,380 |
| I18-090-000-007 | $16,401 | $9,920 | 149 | $2,443,749 | $1,478,125 | $17,886 | $17,886 |
| I18-090-000-008 | $16,401 | $10,420 | 149 | $2,443,749 | $1,552,625 | $9,332 | $9,332 |
| I18-090-000-009 | $16,401 | $7,280 | 100 | $1,640,100 | $728,020 | $7,788 | $7,788 |
| I18-090-000-018 | $16,401 | $6,560 | 126 or 154 | $2,066,526 or $2,525,754 | $826,560 or $1,010,302 | $1,037,685 | $1,037,685 |
| I18-090-000-023 | $16,401 | $9,700 | 49 | $803,649 | $475,320 | $13,283 | $13,283 |
| I18-090-000-010 | $16,401 | $11,792 | 90 | $1,476,090 | $1,061,307 | $35,871 | $35,871 |
| I18-090-000-011 | $16,401 | $6,240 | 90 | $1,476,090 | $561,627 | $8,989 | $8,989 |
| I18-090-000-012 | $16,401 | $9,643 | 90 | $1,476,090 | $867,897 | $6,606 | $6,606 |
| I18-090-000-017 | $16,401 | $6,140 | 152 | $2,492,952 | $933,295 | $7,150 | $7,150 |
| I18-090-000-015 | $16,401 | $10,200 | 104 | $1,705,704 | $1,060,842 | $8,257 | $8,257 |
| I19-090-000-030 | $16,401 | $6,560 | 297 | $4,871,097 | $1,948,439 | $14,269 | $14,269 |

*Table compiled using information contained in Exhibit F, ICP NOPAs & Worksheets. *See also infra* n.17.

While one of the individual civil penalties is significantly higher than the others (I18-090-000-018, $1,037,685), that is because the underlying violation was a failure to post an adjusted bond amount of $943,350.  Exhibit F-11, US_0001558.  In that situation, the cost to abate by posting the bond plus 10 percent ($943,350 + $94,335 = $1,037,685) was higher than

42

the penalty as determined by OSMRE multiplied by the total number of days that the cessation order remained unabated at the time of assessment ($6,560 x 126 days = $826,560).[18]  OSMRE exercised its discretion under SMCRA to rely on the seriousness of the violation, as indicated by the cost to abate (30 C.F.R. § 846.14(a)(2)), and assess the higher amount because the lower amount was less than the required bond.  *Id.*

Consistent with the approach the Fourth Circuit (and other Circuits) have taken in other contexts, the Court should decline to find the penalties at issue here excessive under the Eighth Amendment given that the amounts assessed are well below the maximums authorized by Congress and reflect OSMRE's statutorily-granted discretion to account for numerous factors in determining the amount of a penalty.  "[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature," *Bajakajian*, 524 U.S. at 336, and SMCRA's penalty scheme shows that Congress believes violations of SMCRA are serious. SMCRA's scheme, including giving OSMRE the discretion to treat each day of a continuing violation as a separate violation, shows that Congress intended the associated penalties to be high enough to deter violations and encourage prompt abatement.  *See* S. Rep. No. 95-128, at 57-58 (May 10, 1977) ("[SMCRA's] comprehensive provisions for inspections, enforcement notices and orders, administrative and judicial review, and penalties . . . are of equal importance to the provisions of the bill regarding mining and reclamation performance standards since experience

---

[18] There is a discrepancy in the number of days that the cessation order remained unabated at the time of assessment.  OSMRE's memo to file uses 126 days, Exhibit F-11, US_0001558, but the worksheet uses 154 days, *id.*, US_0001557.  The difference is irrelevant for purposes of Defendants' Eighth Amendment argument because, regardless of the number of days used, the amount assessed is still far less than the maximum amount that OSMRE could have assessed under SMCRA consistent with 30 C.F.R. § 846.14(b) (the daily maximum penalty of $16,401 x 126 or 154 days = $2,066,526 or $2,525,754).

43

with state surface mining reclamation laws has amply demonstrated that the most effective reclamation occurs when sound performance standards go hand in hand with strong, equitable enforcement mechanisms."); *Nat'l Coal Ass'n v. Lujan*, 979 F.2d 1548, 1552 (D.C. Cir. 1992) ("The very purpose of the individual penalties . . . is to impel permittee compliance with SMCRA by giving those who act for the corporation strong cause to adhere to the law and to abate violations promptly."); *see also U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 388 (4th Cir. 2015) (accounting for fact that Congress's decision to set forth a specific penalty scheme under False Claims Act shows that Congress believed a violation of the underlying statute is a "serious offense"); *United States v. Chaplin's, Inc.*, 646 F.3d 846, 852 (11th Cir. 2011) ("Congress, as a representative body, can distill the monetary value society places on harmful conduct; forfeitures falling below the maximum statutory fines for a given offense therefore receive a 'strong presumption' of constitutionality."). Defendants' failure to timely abate the relevant violations and Defendant Justice's failure to pay the assessed amounts for nearly four years evidences the importance of a judgment against Defendant Justice in vindicating Congress's intention that violators of SMCRA be held accountable.

> **b.      The SMCRA violations underlying the penalties are serious and have caused or threaten to cause significant harm.**

The seriousness of the violations underlying the individual civil penalties and the harm flowing from those violations also weigh in favor of finding that the penalties are not excessive under the Eighth Amendment. Many of the violations underlying these penalties threaten public health and safety and the environment. *See* Compl. ¶ 59 (identifying range of violations, including failure to maintain important structures such as dams and spillways and to take steps necessary to prevent waste and drainage from the mine site from polluting nearby land and

water).[19]  For example, individual civil penalty I19-090-000-024 was assessed because Premium

Coal failed to abate a violation for the "failure to pass all surface drainage through an approved

siltation structure before leaving the permit area."  Exhibit F-14, US_0001666.  This failure

resulted in drainage flowing "at approximately 20 gallons per minute, scouring the pond

embankment, and entering a pre-existing slide area."  *Id.*  Individual civil penalty I18-090-000-

007 was assessed because Premium Coal failed to maintain "multiple sediment control

structures" causing "ditches to breach, drainage to by-pass sediment ponds, erosion, slope

instability, water pooling on the road, and increased flow to ponds that are not designed for the

additional flow."  Exhibit F-2, US_0001042.  OSMRE determined that the failure to maintain the

ditches increased the likelihood of "off-site sedimentation and water pollution."  *Id.*  And

individual civil penalty I18-090-000-010 was assessed because National Coal had failed to

remove excess sediment from a basin, which "flows directly into the receiving stream."  Exhibit

F-5, US_0001199.

     These violations cannot be taken lightly.  SMCRA establishes specific performance

standards for mining operations, *see* 30 U.S.C. § 1265, to "protect society and the environment

from the adverse effects of surface coal mining operations," "assure that surface coal mining

operations are so conducted as to protect the environment," and "assure that adequate procedures

are undertaken to reclaim surface areas as contemporaneously as possible with the surface coal

mining operations," 30 U.S.C. § 1202.  The federal regulations provide substantial additional

detail on each of these standards, addressing everything from the removal of topsoil and subsoil,

---

[19] While Defendants deny that the violations identified in Paragraph 59 of the Complaint "pose
health or safety risks or threaten environmental harm," they do not deny the factual descriptions
of those violations and, per 30 U.S.C. § 1268(c), have waived the ability to contest them.  *See*
Answer ¶¶ 59, 636.

to technologies for controlling sedimentation, siltation, and discharge into nearby water sources, to the disposal of coal mine waste.  30 C.F.R. Part 816.  Defendants' noncompliance with these requirements has caused real harm not only to the immediate environment of the mining site but also to the hydrologic balance and ecology of adjacent areas.  Equally important, it undermines SMCRA's clear goals of protecting the environment and public health and safety.

While Defendants did eventually abate some (but not all) of the violations underlying the individual civil penalties, Defendants' delay in abating violations is itself harmful: "the longer the land lies unreclaimed, the greater the probability of soil erosion and increased expenses for the ultimate reclamation." *Com. Standard Ins. Co. v. Ala. Surface Min. Reclamation Comm'n*, 443 So. 2d 1245, 1248 (Ala. Civ. App. 1983).  And while other violations do not directly cause environmental harm, they reflect a neglect of even the most basic procedures promulgated to ensure such harm does not occur.  For example, individual civil penalty I19-090-000-029 was assessed because Premium Coal failed to submit a required annual impoundment certification report, which documents a yearly inspection of a water impoundment by an engineer or other qualified specialist.  Exhibit F-15, US_0001782; 30 C.F.R. § 816.49(a)(11). Such reports discuss the stability, capacity, and structural integrity of the impoundment, including any hazardous conditions.  30 C.F.R. § 816.49(a)(11)(ii); *see also* 30 U.S.C. § 1265 (b)(8) (requirements for permanent water impoundments).

Finally, the individual civil penalties are not grossly disproportional to the underlying SMCRA violations because each penalty amount—calculated based on the cost to abate plus ten percent—necessarily reflects the seriousness of that individual violation.  *See* 30 C.F.R. § 846.14(a)(2) ("[t]he seriousness of the violation" is "indicated by the extent of damage and/or the cost of reclamation"); *Kelly v. U.S. E.P.A.*, 203 F.3d 519, 524 (7th Cir. 2000) (holding a

$7,000 penalty "was not grossly disproportionate to the violation of an important environmental safeguard that could have drawn a total fine of $100,000").

**c.    The penalties reflect a continuing disregard for timely abatement of SMCRA violations.**

The pleadings establish a pattern of conduct by Defendants that also supports upholding the penalties under the Eighth Amendment.  The number of violations and the consistent failure to timely abate those violations demonstrate a disregard for SMCRA and its intended purpose of ensuring reclamation of mined lands to avoid harm to the environment, other users of the land and adjacent properties, and public health and safety.  The undisputed allegations in the Complaint demonstrate that over a period of four years (2018-2022), OSMRE issued at least 44 NOVs and cessations orders against National Coal, 65 against Premium Coal, and 6 against S+H Mining, as well as 17 individual civil penalties against Defendant Justice.  Under SMCRA, unless a violation threatens serious imminent harm, OSMRE first issues a NOV and only moves on to a cessation order if the permittee fails to timely abate the violation.  *See* 30 U.S.C. § 1271 (a)(3); 30 C.F.R. § 843.11(b).  Likewise, OSMRE only issues an individual civil penalty for failure to comply with a cessation order if a cessation order has remained unabated for more than 30 days.  *See* 30 C.F.R. § 846.12(b).  Thus, Defendants' accumulation of NOVs, cessation orders, and individual civil penalties reflects a consistent failure to address violations and instead let those problems linger, allowing on-the-ground harms to potentially worsen.  Equally troubling, Defendant Justice entered into abatement agreements for 9 of the individual civil penalties in which he affirmatively represented that the companies would and could abate the underlying violations by a date certain.  *See* Exhibit G, Abatement Agreements.  Defendant

Justice's failure to comply with every one of those agreements further demonstrates Defendants' seeming disinterest in complying with SMCRA.[20]

Indeed, a significant number of the underlying harms, including those dating back to 2018, remain unabated to this day. These unabated harms include failure to maintain a sedimentation basin to minimize erosion and reduce sediment in runoff outside the permit area (I18-090-000-010), *see* 30 C.F.R. § 816.45; placing spoil against the downslope windrow causing slope instability and exposed timber in backfill (I18-090-000-013), *see* 30 C.F.R. §§ 816.71, 816.102; and failure to post an adjusted bond to cover increased reclamation costs (I18-090-000-018), *see* 30 U.S.C. § 1259; 30 C.F.R. § 800.15. Exhibit K, Decl. of Darrell Taylor ¶ 11. This is precisely the situation that Congress intended SMCRA's penalty scheme to prevent.

While the total amount of penalties sought may be substantial, that total "is the direct result of the number of individual offenses committed by" Defendants. *Korangy*, 498 F.3d at 278; *see also Grashoff v. Adams*, 65 F.4th 910, 918 (7th Cir. 2023) (holding civil penalties not excessive given pattern of defendant's repeat offenses). Every penalty represents a decision made by Defendants not to timely abate a violation of SMCRA and to instead allow water pollution, sedimentation, erosion, and other real harms to continue. *See Ahmad*, 213 F.3d at 817 (holding forfeiture not excessive given, among other things, that defendant's fraud "was not a single, isolated untruth . . . , but rather a series of sophisticated commercial transactions over a period of years"). Defendants should not be able to accumulate years' worth of penalties only to

---

[20] The affirmative commitment in the abatement agreements to complete specific reclamation work by a date certain also belies Defendants' current claims that they lacked the finances to perform the relevant work, *see* Exhibit D, Defs.' Resp. to Interrog. No. 3.

use that higher total amount to argue that the penalties are excessive.  Such an approach would undermine the deterrent effect of SMCRA's penalty provisions not only for Defendants but also for other SMCRA permittees.  *See Bunk*, 741 F.3d at 409 (considering penalties' deterrent effect in analyzing whether penalties were excessive); *Ohio Valley Env't Coal., Inc. v. Hobet Mining, LLC*, No. CIV.A. 3:08-0088, 2008 WL 5377799, at *9 (S.D.W. Va. Dec. 18, 2008) ("A principal purpose of a civil penalty is to 'remove or neutralize the economic incentive to violate environmental regulations;' thus, a penalty is unlikely to deter a violator if it does not remove the competitive advantage of continued non-compliance." (quoting *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 529 (4th Cir. 1999)).  And it would reward Defendants' serial noncompliance with federal law.

*       *       *       *

In summary, the Excessive Fines Clause is inapplicable to the SMCRA penalties assessed here.  Even if it were applicable, the penalties are not excessive because they are below the statutory maximums, were imposed as a result of serious SMCRA violations, and, taken together, demonstrate a continuing disregard for federal law and for the environmental, health, and safety consequences of Defendants' mining activities.

**CONCLUSION**

Defendants' admissions in their Answer, combined with their discovery responses, demonstrate there are no material disputes of fact as to their liability for Counts I and II in the Complaint.  The United States is therefore entitled to summary judgment.  As such, the Court

49

should grant judgment on Counts I and II to the United States in the total amount of $5,791,769,

plus interest, late payment penalties, and administrative expenses.[21]

Respectfully submitted this 8th day of December, 2023,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Michael K. Robertson*
Michael K. Robertson (DC Bar No. 1017183)
Clare Boronow (Barred in Maryland)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Tel.: (202) 305-9609
Fax: (202) 305-0275
michael.robertson@usdoj.gov
clare.boronow@usdoj.gov

CHRISTOPHER R. KAVANAUGH
United States Attorney

*/s/ Krista Consiglio Frith*
Assistant United States Attorney
Virginia Bar No. 89088
United States Attorney's Office
P.O. Box 1709
Roanoke, VA 24008
TEL (540) 857-2250
FAX (540) 857-2614
Email: krista.frith@usdoj.gov

---

[21] The United States seeks a judgment in the amount of the unpaid corporate and individual civil penalties, plus interest, late payment penalties, and administrative expenses, as alleged in the Complaint.  The United States does not seek the 10 percent surcharge under the FDCPA at this time.  *See* Compl. at 158.  However, if the United States obtains a judgment against Defendants, and Defendants do not pay, the United States intends to seek the 10 percent surcharge in connection with its debt collection efforts.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2023, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System, which will send notice, and constitute service, of

such filing to all counsel of record.

_/s/ Krista Consiglio Frith_
Krista Consiglio Frith
Assistant United States Attorney