IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No.: 7:23-cv-318 |
| ) | |
| **A&G COAL CORP., et al** ) | |
| ) | |
| *Defendants.* ) | |

**DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants National Coal, LLC, Premium Coal Company, Inc., S and H Mining (collectively the "Companies"), and James C. Justice, III ("Justice") (collectively the "Defendants"), and state as follows for their Motion and Memorandum in Support of their Motion for Summary Judgment.[1]  The Companies acknowledge that the corporate civil penalties are properly imposed due to the Companies inability to pay or perform reclamation work.  This inability to pay, however, shields Justice under an Eighth Amendment analysis and under the arbitrary statutory scheme at issue.  Accordingly, Justice is entitled to summary judgment on his affirmative defense or, in the alternative, Justice is entitled to a legal ruling that the Excessive Fines Clause of the Eighth Amendment applies to these facts- especially when Justice failed to act in a willful manner.  For the reasons herein, Justice moves for summary judgment:

**BACKGROUND**

The facts in the Complaint are not overly disputed.  The true question before the Court is whether civil penalties should be enforced against an innocent coal owner merely because of his ownership in certain companies that incurred civil penalties because they lacked funds to comply

---

[1] The remaining Defendants previously consented to a judgment.

1

with their coal mining reclamation obligations. As such, the Defendants will dispense with a detailed recitation of the facts and adopt the undisputed and admitted allegations formed by the amalgamation of the Complaint's allegations and the Defendant's Answer. Stated differently, the real question here is a legal one regarding the Eight Amendment and interpretation of the Surface Mining Control and Reclamation Act ("SMCRA").

## LIMITED FACTS REGARDING CORPORATE OWNERSHIP AND VIOLATIONS

The Companies own thousands of acres of land in various states that are subject to regulation under SMCRA. The land was originally mined for steam coal, but in recent years active mining ceased. Despite the lack of active mining, the Companies have reclamation obligations to repair the surface land and associated mining areas. During this reclamation period, the Companies incurred numerous violations ranging from mundane violations involving haul road erosion and clogged culverts to more serious violations relating to waste management. The Companies remedied some violations, but many remain unabated. These violations resulted in the imposition of hundreds of civil penalties which have not been paid, in large part, because the Companies have no ability to pay.

The Companies have no unencumbered assets and are owned by a single parent company Southern Coal Corporation ("SCC"). SCC has been determined to be insolvent by this Court in unrelated proceedings. *See Southern Coal Corporation v. Brickstreet Mutual Insurance*, Civil Action No.: 7:19-cv-00457 (W.D. Va. Sep. 28, 2023) (finding that "Southern Coal is an insolvent entity and has conceded its inability to pay such damages."). SCC's insolvent condition has existed for some time and flows directly to its subsidiaries. For further information, please see the attached Declaration of Stephen W. Ball which is attached hereto as **Exhibit A** and incorporated herein.

This lack of income further complicates the ability of the Companies to perform their reclamation obligations. The reclamation obligations require equipment, manpower, and money to complete. Due to the financial condition and lack of active mining operations, the Companies have no ability to pay the civil penalties and to perform the reclamation work.

Justice, an individual, is the owner of the Companies and oversees their operations. Justice does not take an income from the Companies and his ownership interest can be traced to a time when the Companies were actively engaged in mining operations. This interest remains in form only as there are no active operations which require oversight by Justice. Justice cannot cause the Companies to perform the work as the Companies lack the funds to do so.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

## ARGUMENTS & AUTHORITIES

### I. THE SMCRA GENERALLY

Enacted "to protect society and the environment from the adverse effects of surface coal mining operations," 30 U.S.C. § 1202(a), SMCRA establishes an enforcement scheme that

3

includes civil and criminal penalties.  *See* 30 U.S.C. § 1268.  The statute specifies minimum permit and performance standards for coal mining and reclamation. 30 U.S.C. §§. 1256, 1257, 1258, 1265 and 1266.  The Secretary of the Interior, acting through his authorized representatives, issue notices of violation and cessation orders where necessary to correct violations of the Act identified during inspections. 30 U.S.C. § 1271(a).  Civil penalties may be assessed by the Secretary for violations of the Act based upon the issuance of notices of violation and cessation orders. 30 U.S.C. § 1268(a).

The Office of Surface Mining Reclamation and Enforcement ("OSMRE"), a constituent of the Department of the Interior, handles the imposition of penalties.  To do so, OSMRE determines the gravity of the permit holder's violation and sets the amount of assessed penalties according to a "point system."  Under the point system, a permittee is assigned a score in four categories derived from the factors listed in subsection (a): (1) history of previous violations; (2) "seriousness" of the violation (determined in part by "the extent of potential or actual damage, in terms of area and impact on the public or environment"); (3) degree of any negligence or greater fault involved in the violation; and (4) good faith in attempting to achieve compliance.  *See* 30 C.F.R. § 845.13.  The point total for the violation determines the amount of the permittee's penalty.  *See* 30 C.F.R. § 845.14 (penalty table).

Regarding individual civil penalties ("ICP"), they may be assessed against any "director, officer or agent of a corporate permittee who willfully and knowingly authorized, ordered, or carried out a violation of a permit condition or a failure or refusal to comply with certain orders of the Secretary may be subject to ICP under SMCRA.  *See* 30 U.S.C. § 1268(f); 30 C.F.R. §

846.12(a).[2] OSMRE determines the amount of an ICP consistent with the criteria in 30 C.F.R. § 846.14. (penalty table). Both ICP and civil penalties are "are assessed under section 518 of the Act and this part to deter violations and to ensure maximum compliance with the terms and purposes of the Act on the part of the coal mining industry." 30 C.F.R. § 845.2.

Suit based on non-payment of civil penalties may be brought by the Attorney General at the request of the Secretary in any appropriate district court of the United States. *See* 30 U.S.C. § 1268(d).

## II. CIVIL PENALTIES AND RECLAMATION BONDS ARE USED TO PAY FOR RECLAMATION ACTIVITIES

Since the primary purpose of the SMCRA is to assist with the reclamation of lands impacted by coal production, the funds collected from civil penalties are used to pay for reclamation activities. Pursuant to 30 C.F.R. § 845.21, "OSMRE may utilize money collected by the United States pursuant to the assessment of civil penalties under section 518 of the Act for reclamation of lands adversely affected by coal mining practices after August 3, 1977, until such funds are expended."

SMCRA also uses a bonding procedure that requires a permit applicant to post a reclamation bond to ensure that the regulatory authority has sufficient funds to reclaim the site in the case the permittee fails to complete the approved reclamation plan. *See* 30 C.F.R. 800.11 (requiring a bond or bonds for performance made payable to the regulatory authority and conditioned upon the faithful performance of all the requirements of the Act, the regulatory program, the permit, and the reclamation plan.). The requirement of a bond is consistent with the

---

[2] Originally, the SMCRA did not require ICPs. Those regulations were developed and proposed several years after the corporate civil penalty scheme was developed. In 1980 and 1983, however, OSMRE issued successive internal directives providing guidance concerning implementation ICPs and it was not until after a citizen suit that those regulations were formally adopted in 1986. *See National Coal Ass'n v. Lujan*, 979 F.2d 1548, 1550 - 1551 (D.C. Cir. 1992)

5

goals of SMCRA which are to assure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with the coal mining operations.  *See* 30 U.S.C. § 1202(c) and (e).  The Companies posted reclamation bonds consistent with this provision and those bonds are currently subject to forfeiture proceedings by OSMRE.  *See* Ball Decl. ¶ 7.

### III. THE CORPORATE CIVIL PENALTIES ARE VALID AND ENFORCEABLE

There is no dispute that the corporate civil penalties were properly imposed and, if enforcement was commenced within the applicable five (5) year statute of limitations period, the Companies are obligated to pay these penalties.

### IV. THE INDIVIDUAL CIVIL PENALTIES AGAINST JUSTICE ARE UNENFORCEABLE UNDER THE EIGHTH AMENDMENT

#### a. The Eighth Amendment Applies

The Eighth Amendment protects against government overreach in the imposition of monetary penalties. "Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  *See Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019). The Excessive Fines Clause was taken nearly verbatim from the English Bill of Rights of 1689, which in turn codified Magna Carta's guarantee that excessive financial payments- then known as "amercements" would not be extracted.  Amercements were neither civil nor criminal in nature, and though they were sometimes imposed as punishments for crimes, more frequently they were used to sanction wrongful conduct that did not rise to the level of a criminal offense.  Calvin R. Massey, *The Excessive Fines Clause and Punitive Damages: Some Lessons from History*, 40 Vanderbilt L. Rev. 1233, 1267 (1987).  Recognizing that "[t]he applicability of the Eighth Amendment always has turned on its original meaning," *Ingraham v. Wright*, 430 U.S. 651, 670 n.39 (1977), many of the United States Supreme Court's Excessive Fines Clause cases have discussed the lineage of the Excessive Fines Clause, its history and,

6

consistent with it, made clear that the "primary purpose" of an economic sanction is irrelevant to its classification as a "fine."

In light of this, the Supreme Court has consistently ruled that an economic sanction constitutes a "fine" within the meaning of the Excessive Fines Clause so long as it can "be explained as serving in part to punish." *Austin v. United States*, 509 U.S. 602, 610 (1993); see *United States v. Bajakajian*, 524 U.S. 321, 329 n.4 (1998); *Timbs,* 139 S. Ct. at 690 (2019).

On the other hand, a civil penalty is not a "fine" covered by the Eighth Amendment if it is not "punishment for some offense." *Bajakajian*, 524 U.S. at 328 (1998) (quotation marks omitted). A sanction is a punishment if it is "imposed at the culmination of a criminal proceeding" and requires "conviction of an underlying" crime. *Id*. at 328. A civil penalty is not a punishment if it "serve[s] the remedial purpose of compensating the Government for a loss." *Bajakajian*, 524 U.S. at 329.

### b.  Individual Civil Penalties Are Not Remedial And Constitute A Fine

The whole purpose of SMCRA's penalty structure is deterrence and compliance. *See* 30 C.F.R. § 845.2. This is especially true for ICPs which are designed, in part , to force an owner of a corporate entity to undertake reclamation activities and to punish an owner into action. *See* 30 U.S.C. § 1268(f); 30 C.F.R. § 846.12(a). This was discussed in *National Coal Ass'n v. Lujan*, 979 F.2d 1548 (D.C. Cir. 1992), in which Judge Ginsberg addressed the National Coal Associations attack on the original individual penalty scheme. In doing so, Judge Ginsberg, noted that:

> The very purpose of the individual penalties for which subsection (f) provides is to impel permittee compliance with SMCRA by giving those who act for the corporation strong cause to adhere to the law and to abate violations promptly. As the agency declared when it issued the regulations, the subsection (f) civil penalty rule is designed 'to insure that the requirements of the Act are met'; OSMRE

7

>expected that a corporate official would opt to 'order the corporate permittee to abate the violation' rather than face stiff individual penalties.

*Id. at* 1552.

This is a fine. Recognizing "that sanctions frequently serve more than one purpose," *Austin,* 509 U.S. at 620 - 621, the Court has made clear that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can . . . be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term," *id*. at 621 (*quoting United States v. Halper*, 490 U.S. 435, 448 (1989). Put simply, this means that remedial financial sanctions fall within the ambit of the Excessive Fines Clause so long as they also serve some punitive function.

By OSMRE's own admission, when it adopted the ICP scheme, it was designed to deter and punish an owner into compliance.[3] This is not compensation for a loss. This is further confirmed by the fact that the penalty scheme is not tied to any potential loss amount, but a penalty table created out of thin air. The penalty table is not an indicator of the actual cost of reclamation work, costs incurred by the government, or any other meaningful loss amount. Instead, it is simply based on internally created OSMRE's point system. This is different than other civil penalties imposed by governmental entities such as the Internal Revenue Service. *See e.g. United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1369-73 (M.D. Fla. 2018) (finding tax penalty to be remedial, rather than punitive, because it compensated the Government for the heavy expense of investigation and prevented debilitating effect of lost tax revenue).

---

[3] It is true that "all civil penalties have some deterrent effect," *Hudson v. United States*, 522 U.S. 93, 102 (1997), but that "does not automatically render [them] punitive," *Garner v. U.S. Dep't of Lab*., 221 F.3d 822, 827 (5th Cir. 2000). However, the coercive effect of the ICP at issue, the use of funds for unspecified reclamation activities, and the failure of OSMRE regulations to tie the penalty system to any actual loss amount make these penalties different.

8

### c. Corporate Civil Penalties And Bond Forfeiture Compensate OSMRE For Reclamation Work

Individual civil penalties are duplicative punishments. The entire OSMRE permit scheme is designed, in large part, to ensure that funds are available to assist with reclamation work. The corporate civil penalties serve the same purpose and so does the posting of a reclamation bond when the permit is issued. If the permit holder fails to perform reclamation activities, OSMRE may take action to forfeit the bond and use those funds for payment. *See §* 30 C.F.R. 800.50 (discussing bond forfeiture procedures which occurs when if an operator refuses or is unable to conduct reclamation of an unabated violation).

Thus, OSMRE's civil penalties constitute fines under the Excessive Fines Clause because the civil penalty is assessed in multiple forms to compensate for the same goal: reclamation. Since OSMRE can potentially be made whole from corporate civil penalties and bond forfeiture, the duplicative ICP imposed in this case and punitive. This belt and suspender approach to ensuring funds are available for reclamation work or that reclamation work is performed exacerbates the fine analysis under the Eighth Amendment.

### d. The Individual Civil Penalties Against Justice Are Excessive

Justice's penalty is excessive and grossly disproportionate, under the factors cited in *Bajakajian*: (1) the class of persons targeted by the statute[4]; (2) a comparison with other penalties set by Congress; and (3) the seriousness of the offense and the harm it cause. 524 U.S. 321 (1998). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id*. at 334. A court "must compare the amount of the [penalty] to the gravity of the defendant's offense. If the amount of the [penalty]

---

[4] Justice falls squarely within this definition.

9

is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Id*. at 337; *see also United States v. Hedelman*, 402 F.3d 220 (1st Cir. 2005) ("A forfeiture will violate the Eighth Amendment's prohibition only if it is 'grossly disproportional to the gravity of the defendant's offense'" (*quoting Bajakajian* at 336-37)).

The enormous penalty against Justice is unconstitutional. Here, it was impossible for Justice to force the Companies to comply with their abatement obligations due to insolvency and a lack of mining operations. Likewise, the Companies have no ability to pay a fine. Justice could not meet the coercive demands of the ICP scheme and had no intent to violate the penalty scheme.

In light of the purpose of the statute, Justice's conduct simply does not warrant a million-dollar fine. Such an amount is grossly disproportionate to his offense. In addition to the lack of any attendant criminal activity, Justice's conduct tends to show he did not act with any criminal purpose. Both factually and legally, *infra*, Justice's failure to comply with any abatement order or penalty order was non-willful and he should not be punished for this conduct.

Moreover, and unlike *Bajakajian*, Justice was not criminally prosecuted for his conduct, indicating the government did not believe his conduct warranted it. And like in *Bajakajian*, the ICP assessed against Justice "bears no articulable correlation to any injury suffered by the Government." *Bajakajian*, 524 U.S. at 340. Finally, it is hard to reconcile this penalty scheme with others set by the government as many other schemes are tied to a loss amount and the ICP here is not.

      **V.    THE ICP POINT SYSTEM STRUCTURE IS ARBITRARY IN VIOLATION OF THE DUE PROCESS CLAUSE**

As a matter of due process, punitive fines must bear some relationship to the conduct warranting the fine. *BMW of North America v. Gore*, 517 U.S. 559 (1996). Even if this Court

were to find that the Eighth Amendment does not apply to the fine in this case, the due process clause of the Fifth Amendment prohibits excessive fines, meaning fines that grossly exceed what is "reasonably necessary to vindicate the [government's] legitimate interests in punishment and deterrence." *Id*. at 568.[5]  Moreover, the ICP point system is arbitrary in the sense that it is not tied to loss amount or actual or estimated reclamation costs.

Finally, properly contesting the ICPs requires a "pay to play" approach that makes it difficult to attack unjust penalties.  Pursuant to 30 C.F.R 845.19, a persona charged with a violation can only contest the proposed penalty by submitting a petition and remitting an amount equal to the proposed penalty to be held in escrow in order to property contest the hearing.  This places an undue burden on those with limited financial resources to contest the proposed penalties and submit arguments in support of lowering or dismissing the fine.

## VI. JUSTICE DID NOT ACT WILLFULLY

An individual civil penalty under section 518(f) requires knowing and willful conduct on the part of the individual.  Neither the Act nor the legislative history define the terms "knowingly" and "willfully."  In civil statutes the term "willfully" generally refers to an act or omission which is intentional, knowing, voluntary and conscious, as distinguished from an act which is merely accidental or negligent.  *See, e.g., Messina Construction Corp. v. OSHA*, 505 F.2d 701 (lst Cir. 1974).  Also, courts have construed "willfully" in civil statutes to encompass conduct which is plainly indifferent to statutory or regulatory requirements.  *See, e.g., United States v. Williams,* 489 Fed. Appx. 655, 658 (4th Cir. 2012); *Bedrosian v. United States of Am.,*

---

[5] The Supreme Court's analysis in that case was specific to state-imposed fines and damages, particularly where those damages are intended to deter conduct in other states.  *Id*. at 572 ("[A] State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States.")  The logic, however, applies with equal force here as the violations at issue cross-state lines and OSMRE's ICP structure is designed for deterrence purposes.

11

*Dep't of the Treasury, Internal Revenue*, 912 F.3d 144, 153 (3d Cir. 2018*); Alabama Power Co. v. FERC*, 584 F.2d 750, 752 (5th Cir. 1978).

In discussing the terms "willfully" and "knowingly" OSMRE has explained that the conduct encompasses "conduct or omissions which result from a criminal or evil intent or from a specific intent to violate the law. The knowing and willful nature of conduct may be established by plain indifference to or reckless disregard of the requirements of law, regulations, orders, or the terms and conditions of a permit." 53 Fed. Reg. 3664 (Feb. 8, 1988).

Justice's conduct at issue is based the Companies' inability to pay. The Companies negative financial position existed at or near the time the ICPs were imposed, and Justice cannot be held liable for a willful violations in this context. In other context, inability to pay is a defense to a coercive contempt sanction. Inability to pay can be a defense to a coercive civil sanction or even contempt sanctions for violation of a court order, though the burden lies with the defendant to demonstrate their lack of financial resources. *See RLI Ins. Co v. Nexus Servs*., Civil Action No. 5:18-cv-00066 (W.D. Va. Jun 1, 2023) citing *Maggio v. Zeitz*, 333 U.S. 56, 76 (1948); F.T.C. v. Leshin, 719 F.3d 1227, 1234 (11th Cir. 2013) (noting that inability to pay can be a defense to a coercive contempt sanction). The logic of situations involving contempt and the failure to follow court orders should apply here to find that Justice did not willfully violate OSMRE's regulations.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' Motion for Summary Judgment, or in the alternative, find that the Eighth Amendment defense applies as a matter of law and convene an evidentiary hearing on that issue.

Respectfully submitted,

NATIONAL COAL, LLC., et al.

By: /s/   Aaron Balla Houchens
              Of Counsel

Aaron B. Houchens, Esq. (VSB #80489)
AARON B. HOUCHENS, P.C.
111 East Main Street
P.O. Box 1250
Salem, Virginia 24153
540-389-4498 (telephone)
540-339-3903 (facsimile)
aaron@houchenslaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, a true and accurate copy of the foregoing was provided to the following via the Court's CM/ECF electronic filing system:

Krista Consiglio Frith
United States Attorneys Office - Roanoke
Western District of Virginia
310 First Street, SW, Suite 906
Roanoke, VA 24008
Tel.: 540-857-2956
Fax: 540-857-2283
Krista.Frith@usdoj.gov

/s/   Aaron Balla Houchens

13