IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:23-cv-00318-RSB |
| | ) | |
| A & G COAL CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>UNITED STATES' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF UNITED STATES' MOTION FOR SUMMARY
JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................... 1

RESPONSE TO DEFENDANTS' FACTS ............................................................................. 2

ARGUMENT ........................................................................................................................... 3

    I.  Defendants Have Conceded Liability as to the Corporate Penalties Sought in Count I...... 4

    II. Defendant Justice Owes the Individual Civil Penalties Sought in Count II ....................... 5

        A.    Defendants Misunderstand the Nature, Function, and Regulatory Requirements for Individual Civil Penalties .......................................................................................... 5

            1.  Individual Civil Penalties Are Not "Duplicative" of Corporate Penalties or Bond Forfeiture.............................................................................................................. 5

            2.  Individual Civil Penalties Are Not Calculated Using a Penalty Table and Are Instead Tied to the Cost of Abatement ................................................................. 7

            3.  Escrow Is Not Required to Administratively Contest a Proposed Individual Civil Penalty............................................................................................................. 8

        B.    Defendants' Defenses Fail.................................................................................. 9

            1.  Defendants Have Failed to Establish Defenses of Notice and Service and Statute of Limitations.............................................................................................................. 9

            2.  The Individual Civil Penalties Do Not Violate the Eighth Amendment ....... 10

                a)  The Excessive Fines Clause does not apply to the individual civil penalties……………………………………………………………………10

                b)  The individual civil penalties sought in Count II are not excessive ...... 12

                    i.  Defendant Justice could have, but did not, raise the Defendant companies' alleged insolvency in an administrative petition and thereby conceded liability ................................................................................ 13

                    ii.  Defendants' claims of corporate insolvency are contradicted by their prior statements .................................................................................. 14

                    iii.  The individual civil penalties are not grossly disproportionate to the underlying violations and are necessary to achieve Congress's intent ................................................................................................ 18

            3.  The Individual Civil Penalties Do Not Violate the Fifth Amendment Due Process Clause ................................................................................................. 22

4.   Defendants Are Precluded From Challenging OSMRE's Determination that Defendant Justice Acted "Willfully" Based on the Companies' Alleged Insolvency ......................................................................................................... 25

CONCLUSION.............................................................................................................. 26

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Austin v. United States*, 509 U.S. 602 (1993) ........................................................................ 10, 11

*Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir. 1984) .............................................................. 18

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) ............................................ 22, 23, 24

*Brown v. Flowers*, 196 F. App'x 178 (4th Cir. 2006) ..................................................................... 2

*Causey v. Balog*, 162 F.3d 795 (4th Cir. 1998) ............................................................................. 2

*Doe v. Alger*, 228 F. Supp. 3d 713 (W.D. Va. 2016) .................................................................... 14

*Hudson v. United States*, 522 U.S. 93 (1997) .............................................................................. 11

*Korangy v. U.S. F.D.A.*, 498 F.3d 272 (4th Cir. 2007) ................................................................. 21

*Landfall Tr. LLC v. Fidelity Nat'l Title, Ins. Co.*, No. 3:22-cv-194, 2023 WL 8374731 (E.D. Va. Dec. 4, 2023) ............................................................................................................... 4, 9

*Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457 (D. Md. 2012) ................................ 24

*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310 (4th Cir. 1993) .......................................................... 3

*Nat'l Coal Ass'n v. Lujan*, 979 F.2d 1548 (D.C. Cir. 1992) ..................................................... 6, 23

*Oppenheimer v. ACL LLC*, 504 F. Supp. 3d 503 (W.D.N.C. 2020) ............................................... 9

*Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825 (D. Md. 2011) ..................................... 23

*S. Coal Corp. v. Brickstreet Mut. Ins. Co.*, No. 7:19-CV-00457, 2023 WL 6368233 (W.D. Va. Sept. 28, 2023) ............................................................................................................ 17

*Sales v. Grant*, 224 F.3d 293 (4th Cir. 2000) ................................................................................ 4

*Sony BMG Music Ent. v. Tenenbaum*, 719 F.3d 67 (1st Cir. 2013) ............................................. 24

*Timbs v. Indiana*, 139 S. Ct. 682 (2019) ..................................................................................... 10

*U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015) ................................................ 24

*United States v. Al Sharairei*, No. CR14-63-LTS, 2023 WL 3995450 (N.D. Iowa June 14, 2023)

............................................................................................................................... 20

*United States v. Bajakajian*, 524 U.S. 321 (1998) ...................................................... 10, 11, 19, 20

*United States v. Bennett*, 986 F.3d 389 (4th Cir. 2021) ................................................................ 20

*United States v. Halper*, 490 U.S. 435 (1989) ............................................................................. 10

*United States v. Jalaram, Inc.*, 599 F.3d 347 (4th Cir. 2010) ...................................................... 20

*United States v. Toth*, 33 F.4th 1 (1st Cir. 2022) ............................................................. 10, 12, 23

*Williams v. Genex Servs., LLC*, 809 F.3d 103 (4th Cir. 2015) ..................................................... 18

**Statutes**

30 U.S.C. § 1201 ........................................................................................................................... 11

30 U.S.C. § 1202 ....................................................................................................................... 6, 20

30 U.S.C. § 1259 ............................................................................................................................. 6

30 U.S.C. § 1268 ........................................................................................................... 7, 8, 13, 19

30 U.S.C. § 1276 ........................................................................................................................... 23

30 U.S.C. § 1308a ..................................................................................................................... 6, 12

**Rules**

Federal Rule of Civil Procedure 56(c)(1) ................................................................................ 2, 14

Local Civil Rule 56(b) .................................................................................................................... 2

**Regulations**

30 C.F.R. § 701.5 .......................................................................................................................... 25

30 C.F.R. § 800.50 .......................................................................................................................... 6

30 C.F.R. § 843.18 ........................................................................................................................ 13

30 C.F.R. § 845.14 .......................................................................................................................... 8

30 C.F.R. § 845.19(a)................................................................................................ 8

30 C.F.R. § 845.2 ..................................................................................................... 6

30 C.F.R. § 845.21 ................................................................................................... 6

30 C.F.R. § 846.12(b) .............................................................................................. 7

30 C.F.R. § 846.14 ................................................................................................... 8

30 C.F.R. pt. 846 ..................................................................................................... 8

43 C.F.R. § 4.1302 ............................................................................................ 13, 26

53 Fed. Reg. 3664-01, 3671 (Feb. 8, 1988) ................................................... 8, 19, 23

## **EXHIBITS**

| | |
|---|---|
| Exhibit L | Defendants' Documents Produced in Discovery: June 19, 2020 Letter from James C. Justice, III, President of Bluestone, to the Office of Surface Mining Reclamation and Enforcement, DEF000083-84 |
| Exhibit M | Defendants' Documents Produced in Discovery: July 9, 2020 Letter from Stephen Ball, General Counsel of Bluestone, to the Office of Surface Mining Reclamation and Enforcement, DEF000087-88 |
| Exhibits N-1 to N-30 | Defendants' Documents Produced in Discovery: Reclamation Agreements, DEF000016-82 |
| Exhibits O-1 to O-24 | Statements of Reasons filed by Appellants S and H Mining, Inc., National Coal, LLC, and Premium Coal Company, Inc., before the Interior Board of Land Appeals |

## INTRODUCTION

Defendants' Motion for Summary Judgment narrows the issues remaining in this case and further demonstrates that the United States' cross Motion for Summary Judgment should be granted.  Defendants have conceded liability on the corporate civil penalties sought in Count I of the United States' Complaint by "acknowledg[ing]" that those penalties were "properly imposed" and failing to identify any material factual disputes that would preclude summary judgment in favor of the United States.  Defs.' Mot. & Mem. in Supp. of Mot. for Summ. J. at 1, ECF No. 34 ("Defs.' MSJ").  As for the individual civil penalties sought in Count II against James C. Justice, III ("Defendant Justice"), Defendants' defenses rely solely and entirely on the Defendant companies' alleged insolvency.  Defendants argue in various forms that Defendant Justice cannot be held liable because he had no ability to compel the companies to abate violations when the companies themselves had no resources to complete reclamation.  This argument fails as a factual matter because Defendants' claims of corporate insolvency are wholly unsupported and are directly contradicted by their own statements, including statements as recent as October 2023.  And it fails as a legal matter because Defendant Justice has already conceded liability as to the individual civil penalties by operation of law.  Moreover, because the United States seeks summary judgment at this time only on the issue of liability, Defendants' current ability to pay a judgment is irrelevant.

Defendants admit that they "have reclamation obligations," that they have "incurred numerous violations," including "serious violations," and that many of those violations "remain unabated."  Defs.' MSJ at 2.  Yet, at the same time that Defendants argue corporate insolvency in this case, they are simultaneously arguing that the companies are ready and able to abate violations in an effort to prevent the Office of Surface Mining Reclamation and Enforcement

1

("OSMRE") from acquiring the funds necessary to complete reclamation via bond forfeiture in an ongoing administrative proceeding.  Regardless of Defendants' assertions, they have violated federal law, causing harm to the environment and to public health and safety that has remained unabated for years.

Congress established the penalty and enforcement scheme in the Surface Mining Control and Reclamation Act of 1977 ("SMCRA") to address precisely this situation, in which companies focus their resources on mining, which generates profits, but fail to ensure that resources are available for reclamation after mining ends and seek to avoid accountability for that failure.  The Court should enforce SMCRA, and fulfill Congress's plain intentions, by granting summary judgment in favor of the United States.

## RESPONSE TO DEFENDANTS' FACTS

Defendants do not provide a statement of undisputed material facts as required by Local Civil Rule 56(b), instead stating that they "adopt the undisputed and admitted allegations formed by the amalgamation of the Complaint's allegations and the Defendant's Answer."  Defs.' MSJ at 2.  Nevertheless, they include a section in their memorandum titled "Limited Facts Regarding Corporate Ownership and Violations" that purports to provide background about Defendants' mining activities and financial position.  *Id.* at 2-3.  Even if the Court were to treat this portion of their brief as a statement of allegedly undisputed facts, the statements made therein are not supported by "specific record citations" as required by Local Civil Rule 56(b) and Federal Rule of Civil Procedure 56(c)(1), and, therefore, the Court should not rely on them.  *See Brown v. Flowers*, 196 F. App'x 178, 182 (4th Cir. 2006) ("vague and conclusory" statements are insufficient "to create a genuine issue of material fact" on summary judgment) (citing *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th

2

Cir. 1993) ("The summary judgment inquiry thus scrutinizes the [movant's] case to determine whether the [movant] has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.").  Because most of the statements are vague and unsupported by evidence, Defendants have waived their opportunity to establish undisputed material facts and the United States is unable to otherwise respond.  The United States instead points the Court to its own recitation of undisputed material facts, supported by record citations, in its Memorandum in Support of its Motion for Summary Judgment.  U.S. Mem. of Law in Supp. of Mot. for Summ. J. at 13-21, ECF No. 33 ("U.S. Mem.").  The United States retains the right to contest any of the "facts" alleged by Defendants in this and any other portion of their memorandum.

## **ARGUMENT**

The Court should grant summary judgment in favor of the United States.  Defendants have conceded liability as to the corporate penalties in Count I, and their unsupported claims of corporate insolvency do not relieve Defendant Justice of liability for the individual civil penalties sought in Count II.  The individual civil penalties are not "fines" for purposes of the Eighth Amendment's Excessive Fines Clause, but, even if they were, they are calibrated to the underlying violations and are not "grossly disproportional" to the gravity of the offenses— namely, allowing SMCRA violations, including water pollution, erosion, and structural instability, to remain unabated for months if not years.  Defendants' Fifth Amendment due process defense also fails because it asserts a time-barred facial challenge to the federal regulations governing individual civil penalties.  Even if it were not time-barred, the defense misapplies law relevant to punitive damages to the statutory penalties at issue here.  Defendants also cannot belatedly challenge OSMRE's determination as to each individual civil penalty that

Defendant Justice acted "willfully"; Defendant Justice waived that argument by failing to raise it in a petition for administrative review even though Defendants allege in their summary judgment motion that Defendant companies have been insolvent since "at or near the time" the penalties were imposed.  Defs.' MSJ at 12.  For all of these reasons, the Court should deny Defendants' summary judgment motion and grant summary judgment in favor of the United States.

## I.    Defendants Have Conceded Liability as to the Corporate Penalties Sought in Count I

The Court should grant summary judgment in favor of the United States on Count I because Defendants concede that the "corporate civil penalties are valid and enforceable." Defs.' MSJ at 6.  That concession fully resolves Count I.

Even if the Court were to consider the notice and service and statute of limitations defenses identified in Defendants' Answer and discovery responses, both fail.  Defendants' motion for summary judgment makes no argument whatsoever as to notice and service, and, as explained in the United States' motion, the admitted allegations in the Complaint establish service for every penalty.  *See* U.S. Mem. at 29-30; *see also Landfall Tr. LLC v. Fidelity Nat'l Title, Ins. Co.*, No. 3:22-cv-194, 2023 WL 8374731, at *4 n.10 (E.D. Va. Dec. 4, 2023) (concluding that defendant abandoned affirmative defense which it set forth in its answer but only referenced and did not seriously pursue in dispositive motions) (citing *Sales v. Grant*, 224 F.3d 293, 296 (4th Cir. 2000)).  Similarly, Defendants make no attempt to assert a statute of limitations defense as to any specific penalties sought in the Complaint.  Here again, the admitted allegations in the Complaint and documentary evidence establish that the United States filed suit within the limitations period for all of the corporate penalties.  *See* U.S. Mem. at 32-35.

Because Defendants have explicitly conceded liability as to the corporate civil penalties, *see* Defs.' MSJ at 6, have identified no material factual disputes, and have failed to assert any

4

defense as a matter of law as to any specific penalties, the Court should grant summary judgment in favor of the United States on Count I.

## II.     Defendant Justice Owes the Individual Civil Penalties Sought in Count II

Defendant Justice owes the individual civil penalties sought in Count II and cannot rely on the permittee companies' alleged insolvency to avoid them.  The United States first corrects the misrepresentations by Defendants regarding individual civil penalties, as those inaccuracies underpin many of their arguments.  We then explain why each of Defendants' defenses fails.

### A.     Defendants Misunderstand the Nature, Function, and Regulatory Requirements for Individual Civil Penalties

Defendants' arguments contain several misrepresentations about individual civil penalties, including by claiming that they are "duplicative" of corporate penalties and bond forfeiture, calculated based on a "penalty table created out of thin air," and divorced from "the actual cost of reclamation," and that an individual must place the total amount of the penalty into escrow to administratively challenge it.  Defs.' MSJ at 8, 9, 11.  Each of these assertions is incorrect, and, thus, the arguments that rely on them are similarly incorrect.

#### 1.     Individual Civil Penalties Are Not "Duplicative" of Corporate Penalties or Bond Forfeiture

Defendants claim that the individual civil penalties are "duplicative punishments" because OSMRE has access to other sources of funds to abate violations, namely corporate penalties and bond forfeiture.  Defs.' MSJ at 9.  This argument is premised on a misunderstanding of the purpose and function of all three regulatory mechanisms.

Most fundamentally, penalties (whether corporate or individual) are not duplicative of bond forfeiture because they serve different purposes.  Penalties are intended to deter the permittee from violating SMCRA, the federal regulations, and permit requirements in the first instance and, should a violation occur, to incentivize timely abatement of the violation.  30

C.F.R. § 845.2; *see also* 30 U.S.C. § 1202(e); *Nat'l Coal Ass'n v. Lujan*, 979 F.2d 1548, 1552

(D.C. Cir. 1992) (individual civil penalties are meant to "impel permittee compliance with

SMCRA by giving those who act for the corporation strong cause to adhere to the law and to

abate violations promptly"). Penalties would not work as a deterrent if they were merely an

alternative mechanism for collecting money for abatement. They function by imposing costs on

top of and in addition to the cost of abatement.

While money collected from civil penalties can be used for the reclamation of "lands

adversely affected by coal mining practices after August 3, 1977," *see* 30 U.S.C. § 1308a, the

funds are not earmarked to reclaim the violations underlying those specific penalties. The

regulation that Defendants cite says as much. *See* Defs.' MSJ at 5. Under 30 C.F.R. § 845.21,

funds collected from the assessment of civil penalties may be allocated to reclamation projects

based on the priorities set forth in § 845.21(b), *not* based on the violations underlying the original

penalties.

In contrast to penalties, bond forfeiture is the mechanism by which OSMRE accesses the

money necessary to complete reclamation on a specific permit when the permittee refuses or is

unable to reclaim the site. Before they may begin mining, SMCRA requires permittees to post a

bond or bonds specific to the permit area and the permit requirements. 30 U.S.C. § 1259(a).

"The amount of the bond shall be sufficient to assure the completion of the reclamation plan if

the work had to be performed by the regulatory authority in the event of forfeiture . . . ." *Id.*

"[I]f the terms of the permit are not met, or if the operator defaults on the conditions under which

the bond was accepted," OSMRE "shall" take action to "forfeit all or part of" the applicable

bond or bonds and "shall . . . [u]se funds collected from bond forfeiture to complete the

reclamation plan . . . ." 30 C.F.R. § 800.50(a)-(b).

Individual civil penalties are also not duplicative of corporate civil penalties.  OSMRE only assesses individual civil penalties for failure to comply with a cessation order if the cessation order has remained unabated for more than 30 days, *id.* § 846.12(b), thereby demonstrating that the cessation order and associated corporate penalties have proven ineffective in achieving timely abatement.  Congress expressly provided for individual civil penalties (30 U.S.C. § 1268(f)) in addition to corporate penalties (30 U.S.C. § 1268(a)) for situations precisely like those at issue in this case, where corporate penalties alone are insufficient to achieve abatement.

This regulatory framework, combined with the undisputed facts, shows the spuriousness of Defendants' suggestion that the individual civil penalties are unnecessary because OSMRE has alternative sources of funding by which to complete the necessary reclamation work.  The purpose of the individual civil penalties (and corporate penalties) is *not* to pay for reclamation.  But even if OSMRE could use the corporate or individual civil penalties to abate some of the underlying violations despite the regulatory limitations outlined above, Defendants have not paid any of those penalties.  At the same time, Defendants admit they have opposed and appealed OSMRE's efforts to forfeit the bonds for the permits at issue here.  Defs.' MSJ, Decl. of Stephen W. Ball ¶ 7, ECF No. 34-1.  These realities further belie Defendants' contention that OSMRE has multiple options for locating funds for reclamation.

### 2.    Individual Civil Penalties Are Not Calculated Using a Penalty Table and Are Instead Tied to the Cost of Abatement

Defendants are similarly incorrect in their explanation of how individual civil penalties are calculated.  Defendants claim that OSMRE calculates individual civil penalties using a "penalty table."  Defs.' MSJ at 5, 8.  As the United States explained in its motion for summary judgment, although OSMRE uses a penalty table to calculate corporate civil penalties, *see* 30

7

C.F.R. § 845.14, there is no such table for individual civil penalties.  Instead, OSMRE

determines the amount of an individual civil penalty using the criteria and statutory maximum

penalty amount set forth in 30 U.S.C. § 1268(a).  *See* 30 C.F.R. § 846.14; *see also* U.S. Mem. at

11, 38-40.

Further, Defendants are wrong that the individual civil penalty amounts are divorced

from "any potential loss amount" or the "actual cost of reclamation work."  Defs.' MSJ at 8.  As

the United States explained in its summary judgment motion, by OSMRE directive, the total

individual civil penalty amount "shall not exceed the estimated cost of abatement plus a 10

percent incentive amount."  OSMRE Directive INE-40 at 7.[1]  Consistent with that directive, for

every individual civil penalty sought in Count II, OSMRE assessed the cost of abatement plus 10

percent.  *See* U.S. Mem. at 39-42.

### 3.    Escrow Is Not Required to Administratively Contest a Proposed Individual Civil Penalty

Defendants also wrongly claim that administratively contesting an individual civil

penalty requires the individual to "pay to play," *i.e.*, that Defendant Justice would have had to

place the proposed individual civil penalty amounts in escrow in order to file a petition for

administrative review.  *See* Defs.' MSJ at 11.  SMCRA requires that a permittee wishing to

challenge a *corporate* civil penalty must place the proposed penalty amount in escrow to avoid

waiving "all legal rights to contest the violation or the amount of the penalty."  30 U.S.C.

§ 1268(c); *see also* 30 C.F.R. § 845.19(a).  However, there is no equivalent requirement for an

individual wishing to challenge a proposed individual civil penalty.  *See* 30 C.F.R. pt. 846;

Surface Coal Mining and Reclamation Operations; Initial Regulatory Program and Permanent

Regulatory Program; Individual Civil Penalties, 53 Fed. Reg. 3664-01, 3671 (Feb. 8, 1988)

---

[1] Available here: https://www.osmre.gov/laws-and-regulations/directives.

("Unlike [30 C.F.R.] §§ 723.19(a) and 845.19(a), which cover other civil penalty assessments, this rule does not require an individual to prepay the penalty before he or she appeals. The Act does not mandate prepayment of an individual civil penalty."). Thus, Defendant Justice cannot blame a nonexistent escrow requirement for his failure to timely administratively challenge any of the proposed individual civil penalties.

>     **B.     Defendants' Defenses Fail**

With those corrections in mind, the Court should reject Defendants' defenses and grant summary judgment to the United States on the individual civil penalties sought in Count II.

>     **1.     Defendants Have Failed to Establish Defenses of Notice and Service and Statute of Limitations**

Although Defendants asserted notice and service and the statute of limitations as affirmative defenses potentially applicable to the individual civil penalties sought in Count II in their Answer and discovery responses, they make no argument whatsoever as to either defense in their motion for summary judgment. Because they have failed to assert either defense, including failing to offer evidence or identify material factual disputes relevant to either issue, the Court should reject both defenses. *See, e.g.*, *Oppenheimer v. ACL LLC*, 504 F. Supp. 3d 503, 512 (W.D.N.C. 2020) (finding plaintiff entitled to summary judgment where defendants "raised these affirmative defenses without providing any supporting facts and have failed to offer any theory whatsoever about why the Court should not grant summary judgment"); *Landfall Trust LLC*, 2023 WL 8374731, at *4 n.10; *see also* U.S. Mem. at 29-35 (explaining why both defenses fail as to both corporate and individual civil penalties); Defs.' MSJ at 2 (explaining that "the real question here is a legal one regarding the Eight[h] Amendment and interpretation of [SMCRA]").

### 2.     The Individual Civil Penalties Do Not Violate the Eighth Amendment

#### a)     The Excessive Fines Clause does not apply to the individual civil penalties

Defendants rely heavily on *Timbs v. Indiana*, 139 S. Ct. 682 (2019); *United States v. Bajakajian*, 524 U.S. 321 (1998); and *Austin v. United States*, 509 U.S. 602 (1993), to argue that an economic sanction is subject to the Excessive Fines Clause if it serves some deterrent or punitive purpose.  But in framing the Eighth Amendment analysis purely as a question of whether a penalty serves a punitive and deterrent function, Defendants ignore the criminal tie found in every Supreme Court case to consider the issue.  Unlike the individual civil penalties at issue here, all of those cases involved either a civil action seeking forfeiture of property used in the commission of a crime brought after the property owner had been convicted of a crime, *see Timbs*, 139 S. Ct. at 686; *Austin*, 509 U.S. at 605, or the forfeiture of property ordered as a sanction for criminal conduct after an adjudication of guilt, *see Bajakajian*, 524 U.S. at 325-26. As Defendants themselves state, "[a] sanction is a punishment if it is 'imposed at the culmination of a criminal proceeding' and requires 'conviction of an underlying' crime."  Defs.' MSJ at 7 (quoting *Bajakajian*, 524 U.S. at 328).  Because neither component is present here, the Eighth Amendment does not apply.  *See United States v. Toth*, 33 F.4th 1, 16 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 552 (Jan. 23, 2023) (concluding that, unlike penalties in *Austin* and *Bajakjian*, a $2 million civil penalty imposed under the Department of Treasury's regulations implementing the Bank Secrecy Act, 31 U.S.C. § 5314(a), was not a "fine" for Eighth Amendment purposes because "it was imposed following an administrative tax audit," not at the culmination of a criminal proceeding), *cert. denied*, 143 S. Ct. 552 (2023).

Defendants also put too much weight on the individual civil penalties' deterrent effect. In *Austin*, the Supreme Court turned to *United States v. Halper*, 490 U.S. 435 (1989)—a then-

recently decided Double Jeopardy Clause case—to hold that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term."  509 U.S. 610 (quoting *Halper*, 490 U.S. at 448).  But shortly after the decision in *Austin*, the Supreme Court in *Hudson v. United States*, 522 U.S. 93 (1997), rejected *Halper's* "deterrent purposes" test, explaining that "all civil penalties have some deterrent effect."  522 U.S. at 102; *cf. id.* at 101 (further criticizing the *Halper* decision because it "bypassed the threshold [double jeopardy] question: whether the successive punishment at issue is a 'criminal' punishment").  Unlike the individual civil penalties at issue here, the forfeitures in *Austin*, *Bajakajian*, and *Timbs* are "fines" for purposes of the Excessive Fines Clause because they were imposed under statutes specifically intended to deter *criminal* conduct.  *See Austin*, 509 U.S. at 620; *Bajakajian*, 524 U.S. 328-29.  If compelling compliance via a deterrent effect alone were sufficient to make a penalty subject to the Excessive Fines Clause regardless of any tie to criminality, every penalty would fall within its orbit as every civil penalty presumably deters to some extent the conduct for which the penalty is assessed.

Finally, like the reporting penalty and other tax penalties discussed in *Toth*, the civil penalties here serve to address serious harm to the public welfare.  Unlike the failure to report currency in *Bajakajian*, which caused only "minimal" harm in the form of depriving the Government of information and was thus more indicative of serving to punish, 524 U.S. at 339, SMCRA and its resulting penalties were designed in part to address the fact that "many surface mining operations result in disturbances of surface areas that burden and adversely affect commerce and the public welfare."  30 U.S.C. § 1201(c).  In fact, Congress provided that the Secretary of the Interior "may use directly or through grants to States, moneys collected for civil

penalties . . . to reclaim lands adversely affected by coal mining practices . . . ."  30 U.S.C.

§ 1308a.  This direct link to the harms SMCRA was intended to address, even if not directed

towards ameliorating the particular harms that led to each individual civil penalty, brings

SMCRA civil penalties in line with other civil penalties that were enacted to help address

similarly harmful conduct to the general welfare.  *See Toth*, 33 F.4th at 17 (concluding that

penalty was not punishment in part because it addressed the loss of tax revenue through the

secret use of foreign accounts and the difficulties faced by law enforcement in policing the use of

these accounts).

      In seeking sanctuary within the confines of the Excessive Fines Clause here, Defendant

Justice asks this Court to expand the Clause's application.  Defendant Justice maintains that the

individual civil penalties are subject to the Excessive Fines Clause because they were "designed

to deter and punish an owner into compliance."  Defs.' MSJ at 8.  But every civil penalty at least

in some part deters and shapes the conduct it is meant to address.  Moreover, encouraging civil

compliance is not equivalent to deterring *criminal* conduct.  Because the individual civil

penalties are not tied to any criminal sanction and further the greater public purposes underlying

SMCRA's enactment, the Court should conclude that the individual civil penalties are not

subject to the Excessive Fines Clause.

         **b)**    **The individual civil penalties sought in Count II are not excessive**

      Even if the Excessive Fines Clause applies to the individual penalties sought in Count II,

those penalties are not excessive for the reasons explained in the United States' motion for

summary judgment.  *See* U.S. Mem. at 37-49.  In their motion, Defendants claim the penalties

are excessive solely because it was allegedly "impossible" for Defendant Justice "to force the

Companies to comply with their abatement obligations due to insolvency and a lack of mining

12

operations."  Defs.' MSJ at 10.  This argument fails as a matter of law and is contradicted by documentary evidence.

          i.         *Defendant Justice could have, but did not, raise the Defendant companies' alleged insolvency in an administrative petition and thereby conceded liability*

Defendant Justice effectively waived the corporate insolvency defense by failing to raise it in a petition for administrative review.  It is thus irrelevant here.  As the United States explained in its motion for summary judgment, *see* U.S. Mem. at 28, "[f]ailure to file a petition for review" with the U.S. Department of the Interior's Office of Hearings and Appeals within 30 days of service of the notice of proposed individual civil penalty assessment "shall be deemed an admission of liability by the individual[.]"  43 C.F.R. § 4.1302.  The undisputed evidence demonstrates that Defendant Justice did not file a petition for administrative review within 30 days of service of the notice of proposed assessment ("NOPA") for any of the individual civil penalties sought in Count II.  Compl. ¶¶ 71, 104, 117, 135, 215, 219, 232, 241, 278, 291, 494, 498, 502, 523, 536, 553; Answer ¶¶ 71, 104, 117, 135; Defs' Resp. to RFA Nos. 3-15.  If Defendant Justice had filed a petition for administrative review for each of the individual civil penalties, he could have raised the arguments he raises here, including arguing that the companies' insolvency precluded a finding that Defendant Justice "willfully and knowingly authorized, ordered, or carried out" the companies' failures or refusals to comply with OSMRE's cessation orders.[2]  *See* 30 U.S.C. § 1268(f); *see also infra* p. 25.  By failing to file a petition for review for any of the individual civil penalties, Defendant Justice conceded liability as to the

---

[2] Defendant companies could also have administratively challenged the proposed corporate penalties that preceded the individual civil penalties on the basis of their alleged insolvency but did not do so.  *See* U.S. Mem. at 14-15; 30 C.F.R. § 843.18(c).

individual civil penalties by operation of law and cannot now generate a second chance to litigate

that issue by reframing it under the Eighth Amendment.

        ii.     *Defendants' claims of corporate insolvency are*
                 *contradicted by their prior statements*

Even if the Court were willing to look past Defendant Justice's concession of liability by

operation of law, Defendants' claims of corporate insolvency are unsupported by *any* evidence,

and they are inconsistent with Defendants' own prior and current statements. *See* Fed. R. Civ. P.

56(c)(1) (on summary judgment, facts must be supported by evidence); *Doe v. Alger*, 228 F.

Supp. 3d 713, 724 (W.D. Va. 2016) (recognizing that in opposing a cross-motion for summary

judgment a party "may not rest upon the mere allegations or denials of [his] pleadings, but rather

must set forth specific facts" by "citing to particular parts of materials in the record") (alteration

in original) (internal quotation marks and citations omitted). Defendants claim National Coal,

Premium Coal, and S+H Mining are and have been insolvent and, therefore, unable to "pay or

perform reclamation work" since "at or near the time" the individual civil penalties were

imposed. Defs.' MSJ at 1, 12. However, Defendants provide no evidence whatsoever to support

this claim; among other things, they do not contend, much less show, that any of the relevant

entities are in bankruptcy, and they do not even offer a date certain on which each company

allegedly became insolvent.[3] Even more problematic, the claim is contradicted by Defendants'

prior and current representations to OSMRE, the U.S. Department of the Interior, and this Court.

---

[3] Tellingly, the declaration that Defendants attach to their summary judgment motion provides no
support for their claims of past and present corporate insolvency precluding reclamation.
Instead, Stephen W. Ball, Executive Vice President and General Counsel of Southern Coal
Corporation, the parent company and sole owner of Premium Coal, National Coal, and S+H
Mining, appears to undermine those claims by stating that the companies have engaged in
"additional reclamation work and paperwork," albeit without providing any dates or identifying
the relevant violations. Defs. MSJ, Decl. of Stephen W. Ball ¶ 6, ECF No. 34-1.

OSMRE notified Defendant Justice of the proposed individual civil penalties at issue in this case between September 2018 and December 2019.  *See* U.S. Mem., Exhibits F-1 to F-17.  In response, Defendant Justice entered into abatement agreements for nine of the individual civil penalties between November 2018 and February 2019.  U.S. Mem., Exhibits G-1 to G-9.  In each agreement, Defendant Justice and the relevant company agreed to take specific measures to abate the violation by a date certain, in most cases about 20-45 days after execution of the abatement agreement.  *See id.*[4]  By signing the abatement agreements, therefore, Defendant Justice affirmatively represented to the federal government that the company had the resources and ability to abate the violation.  Defendants' more recent statements in this litigation—that they lacked access to resources such that it would have been "impossible" for them to abate the violations, *see* Defs.' MSJ at 10—cannot be reconciled with those abatement agreements.

Defendant Justice and the Defendant companies continued in 2020 to state that they not only had resources to engage in reclamation and abatement but were actively deploying those resources.  On June 19, 2020, Defendant Justice sent a letter to OSMRE asserting that "most of the fieldwork that was outstanding in Tennessee on April 15, 2019 has been completed and abated."  Exhibit L, DEF000083.  He went on to state that "Bluestone/Justice Organization has continuously worked equipment, manpower and resources in Tennessee since our last meeting

---

[4] For example, in Exhibit G-1 signed on November 29, 2018, Defendant Justice agreed that "[b]y January 8, 2019, Premium Coal Company Incorporated will complete all work necessary to abate the cessation order and underlying violation," including "grad[ing] the haul road from Rt. 116 to the face-up of Mine #5A," "reestablish[ing] all ditch lines," "extend[ing] culvert 5A so that it by-passes the landslide area or install[ing] an impermeable rock lined drain through the landslide to prevent further movement," "grad[ing] the access road below Mine #5A face-up and the access road to pond 001," "install[ing] water bars every 20 feet on both roads and direct[ing] the discharge from the water bars into the existing approved rock lined channel to the left of the water bars," and "revegetat[ing] and mulch[ing] all disturbed areas."  U.S. Mem., Exhibit G-1, US_0000887.

without interruption." *Id.*  Then, on July 9, 2020, Stephen W. Ball, in his capacity as General

Counsel for Bluestone, wrote that in April 2019 Defendant Justice had committed to "dedicate a

spread of equipment to be used solely for reclamation compliance issues in Tennessee" related to

National Coal, Premium Coal, and S+H Mining and "establish a plan for abatement of

outstanding issues."  Exhibit M, DEF000087.  He went on to assert that "[t]he Companies have

followed through on both of these commitments as evidenced by the ongoing work that

continues today."  *Id.*  On October 7, 2020, Mr. Ball again asserted that the companies "have

completed a tremendous amount of fieldwork in Tennessee over the past several months."  U.S.

Mem., Exhibit E, DEF000086.

In 2021, the companies entered into reclamation agreements for certain permits,

including permits containing unabated violations underlying the individual civil penalties sought

in Count II.  *See* Exhibits N-1 to N-30, DEF000016-82.[5]  While the agreements on behalf of S+H

Mining and Premium Coal were signed by Stephen W. Ball in his capacity as Vice President of

those companies, Defendant Justice signed the agreements on behalf of National Coal.  *See*

Exhibits N-23 to N-30, DEF000067-82.  In each agreement, the company agreed to undertake

specific reclamation measures by a date certain.[6]  Therefore, as with the abatement agreements in

2018 and 2019, the reclamation agreements demonstrate that the companies either had sufficient

---

[5] *Compare, e.g.*, U.S. Mem., Exhibit F-7 (2018 NOPA for I18-090-000-013 on Permit 3143) *with* Exhibit N-12, DEF000041-43 (2021 reclamation agreement for Permit 3143); U.S. Mem., Exhibit F-2 (2018 NOPA for I18-090-000-007 on Permit 3233) *with* Exhibit N-19, DEF000058-59 (2021 reclamation agreement for Permit 3233).

[6] For example, as to Permit #3249 (Mine No. 7), Defendant Justice, on behalf of National Coal, agreed that "[o]n or before May 1, 2021, National Coal, LLC, will mobilize all equipment onto Permit 3249 and perform the work necessary to complete reclamation in accordance with the approved reclamation plan[,]" will "remove all temporary ponds and drainage structures . . . prior to submitting a Phase 2 bond release application[,]" and "no later than August 31, 2021," will "complete all work necessary to cause the site to be eligible for, and submit phased bond release requests for the permit."  Exhibit N-30, DEF000081-82.

resources in 2021 to abate violations or that the companies, through Mr. Ball and Defendant

Justice, misrepresented to OSMRE that they had such resources.

Most recently, in September 2023, OSMRE notified Premium Coal, National Coal, and

S+H Mining that it was forfeiting the companies' bonds for certain permits, including permits

containing harms underlying the individual civil penalties sought in Count II, in order to acquire

the funds necessary to complete reclamation because the work still had not been performed

despite Defendants' assertions they would complete the work in years prior.  Defendant

companies Premium Coal, National Coal, and S+H Mining appealed OSMRE's decisions to

forfeit to the Interior Board of Land Appeals ("IBLA").  In filings before the IBLA, dated

October 18 and 23, 2023, the companies represented that they are "prepared to conduct the

necessary work to abate the violation and take steps to avoid like violations in the future."

Exhibits O-1 to O-24.  These statements—made only 46 to 51 days prior to Defendants'

summary judgment motion in this case—directly contradict Defendants' present representation

that the companies "have no ability to . . . perform the reclamation work."  Defs.' MSJ at 3.

If that is not enough, the September 2023 district court decision that Defendants cite for

the proposition that Southern Coal Corporation ("SCC")—the parent company of National Coal,

Premium Coal, and S+H Mining—is insolvent further undermines their claims.  Contrary to

Defendants' representations here that "SCC's insolvent condition has existed for some time and

flows directly to its subsidiaries," Defs.' MSJ at 2, in that case, SCC argued that it was *not*, in

fact, insolvent but "merely inactive" and further explained that SCC's "debts are being paid and

its judgments satisfied . . . by other entities within the 'Justice family operations.'"  *S. Coal

Corp. v. Brickstreet Mut. Ins. Co.*, No. 7:19-CV-00457, 2023 WL 6368233, at *4 (W.D. Va.

Sept. 28, 2023) (citation omitted).  Although the court in *Southern Coal Corporation* rejected

17

SCC's assertion that it was "inactive" rather than insolvent in deciding to grant an injunction against SCC requiring specific performance of a contract, SCC has appealed that decision.

In sum, even if Defendants' insolvency argument was not foreclosed as a matter of law for the reasons explained above, *see supra* p. 13, Defendants' various abatement agreements, reclamation agreements, letters to OSMRE, and IBLA and district court filings foreclose any insolvency-based defense at this juncture because Defendants cannot generate a genuine issue of material fact sufficient to overcome summary judgment simply by contradicting their own prior statements. *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."). To allow otherwise "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Williams v. Genex Servs., LLC*, 809 F.3d 103, 110 (4th Cir. 2015) (quoting *Barwick*, 736 F.2d at 960). Because Defendants' claims of insolvency are unsupported and directly contradicted by numerous prior statements, including representations to OSMRE, the IBLA, and this district court, the Court should reject them and refuse to allow Defendants to manufacture an alleged factual dispute to justify their Eighth Amendment claim.

   iii.  *The individual civil penalties are not grossly disproportionate to the underlying violations and are necessary to achieve Congress's intent*

Finally, regardless of the companies' alleged insolvency, under the applicable legal standard, the individual civil penalties are not excessive in violation of the Eighth Amendment. Defendants' assertions to the contrary are belied by the reasonableness of the penalty amounts within SMCRA's statutory penalty scheme and the undisputed evidence of Defendants' serious violations.

To be excessive and thus unconstitutional under the Excessive Fines Clause, Defendants must show that the individual civil penalties are "grossly disproportional" to the gravity of the relevant offenses.  *See United States v. Bajakajian*, 524 U.S. 321, 337 (1998).  Defendants fall far short of their burden under this standard because they do not even attempt to make the requisite showing of disproportionality as to *any* individual civil penalty.  Significantly, OSMRE did not assess one "million-dollar fine" as Defendants assert.  Defs.' MSJ at 10.  Rather, it assessed 17 separate individual civil penalties, each calculated based on the specifics of the underlying violation and the mining operation at issue, as required by SMCRA.  *See* 30 U.S.C. § 1268(a), (f); U.S. Mem., Exhibits F-1 to F-17.  For every individual civil penalty at issue here, OSMRE assessed a penalty amount equal to the cost to abate the violation plus a 10 percent incentive amount to ensure that Defendant Justice had incentive to abate the violation rather than just incur penalties in an equal amount.  *See* U.S. Mem. at 42 (table listing cost to abate each violation plus a 10 percent incentive); *see also* 53 Fed. Reg. 3664-01, 3672 (Feb. 8, 1988) (explaining regulatory intent that "it would be more economical for the corporate official to order the corporate permittee to abate the violation than to pay the penalty or, if the corporate permittee is now defunct, to abate the violation himself rather than pay an individual civil penalty that would be assessed for a sum greater than the cost of abatement").  Each penalty was also within the range specifically authorized by SMCRA.  *See* 30 U.S.C. § 1268(a); U.S. Mem. at 42.  In each instance, therefore, the penalty was both consistent with statutory and regulatory intent and indisputably proportional to the gravity of the underlying offense.

Defendants argue the companies' alleged insolvency makes the individual civil penalties "grossly disproportionate" under *Bajakajian* because "it was impossible for Justice to force the Companies to comply with their abatement obligations."  Defs.' MSJ at 10.  Defendants provide

no authority to support their contention that a defendant's financial position is even relevant to assessing whether a penalty is excessive under the Eighth Amendment.[7]  In the SMCRA context, such a holding would incentivize company officials to render the company insolvent upon the completion of coal extraction in order to avoid paying for reclamation and at the same time insulate themselves from individual civil penalties.  It would also reward company officials like Defendant Justice for making no effort to find additional funds to accomplish abatement.

Equally important, Defendants' insolvency argument wholly ignores the nature and extent of the underlying offenses, contrary to the requisite Eighth Amendment analysis. Defendants' alleged corporate insolvency does not erase or excuse the real on-the-ground harms that, in some cases, have remained unabated for over four years.  *See Bajakajian*, 524 U.S. at 339 (accounting for harm caused by defendant's offenses in assessing excessiveness); *United States v. Jalaram, Inc.*, 599 F.3d 347, 355-56 (4th Cir. 2010) (same).  As much as Defendants try to minimize the gravity of the violations underlying the penalties by focusing only on Defendant Justice's alleged inability to compel the companies to abate, the purpose of the penalties and SMCRA as a whole is to "protect society and the environment from the adverse effects of surface coal mining operations."  30 U.S.C. § 1202(a).  It is undisputed that Defendant Justice, in his role as "owner, controller, and/or agent" of National Coal, Premium Coal, and S+H Mining, *see* Compl. ¶ 20; Answer ¶ 20, consistently failed to ensure that the companies met their reclamation obligations, including failing to timely clean up leaking fuel (I19-090-000-030, U.S.

---

[7] *Cf. United States v. Bennett*, 986 F.3d 389, 400 (4th Cir. 2021) *(*"[W]e have never expressly considered a defendant's means in evaluating the proportionality of a forfeiture judgment. However, to the extent that it is an appropriate consideration, it is merely one factor to be weighed with all other factors."); *United States v. Al Sharairei*, No. CR14-63-LTS, 2023 WL 3995450, at *8-9 (N.D. Iowa June 14, 2023) (holding defendant's lack of assets irrelevant to Eighth Amendment analysis).

Mem., Exhibit F-16, US_0001836), maintain haul roads, in some cases causing off-site sedimentation and risk of slides (I18-090-000-006, U.S. Mem., Exhibit F-1, US_0000986; I18-090-000-008, Exhibit F-3, US_0001094; I18-090-000-009, Exhibit F-4, US_0001167; I18-090-000-014, Exhibit F-8, US_0001415; I18-090-000-017, Exhibit F-10, US_0001512), maintain drainage ditches and prevent sediment from entering receiving streams (I18-090-000-007, U.S. Mem., Exhibit F-2, US_0001042; I18-090-000-012, Exhibit F-17, US_0005619), ensure backfill stability (I18-090-000-013, U.S. Mem., Exhibit F-7, US_0001365; I18-090-000-011, Exhibit F-6, US_0001253), control drainage from the mine site, including passing drainage through an approved siltation structure (I18-090-000-015, U.S. Mem., Exhibit F-9, US_0001461; I19-090-000-023, Exhibit F-13, US_0001630; I19-090-000-024, Exhibit F-14, US_0001666), maintain a dam (I19-090-000-022, U.S. Mem., Exhibit F-12, US_0001599), prevent likely water pollution (I18-090-000-010, U.S. Mem., Exhibit F-5, US_0001199), ensure a sufficient reclamation bond (I18-090-000-018, U.S. Mem., Exhibit F-11, US_0001558), and verify the stability of a water impoundment (I19-090-000-029, U.S. Mem., Exhibit F-15, US_0001782).  "[T]he gravity of [Defendants'] offenses does not diminish because they repeatedly committed the same offense[s]." *Korangy v. U.S. F.D.A.*, 498 F.3d 272, 278 (4th Cir. 2007).  Rather, the gravity of these offenses is compounded by Defendant Justice's repeated unkept promises to abate the violations in abatement agreements, reclamation agreements, and correspondence with OSMRE. U.S. Mem., Exhibit E & Exhibits G-1 to G-9; Exhibits N-1 to N-30, DEF000016-82; Exhibit L, DEF000083-84; Exhibit M, DEF000087-88; *see also* U.S. Mem., Exhibit K ¶ 11 (identifying five violations for which OSMRE issued individual civil penalties in 2018 that remained unabated as of December 7, 2023).

Defendants' actions demonstrate why Congress found a robust enforcement mechanism necessary in SMCRA, and why the Court should not allow Defendants to circumvent that mechanism via an Eighth Amendment claim based solely on unsupported claims of insolvency. The corporate civil penalties and individual civil penalties are clearly not excessive as they have proved insufficient to incentivize Defendants to timely abate the underlying violations. Defendant Justice and Defendant companies have made numerous promises in abatement agreements and reclamation agreements that they have failed to fulfill.  They are now claiming corporate insolvency and yet at the same time making contradictory statements to the IBLA, attempting to block OSMRE's efforts to forfeit the bonds and handle the reclamation itself.  A judgment against Defendants, including Defendant Justice, is necessary to effectuate the penalty provisions of SMCRA and achieve Congress's purpose of holding surface mining operators accountable for violations of SMCRA.

> **3.** **The Individual Civil Penalties Do Not Violate the Fifth Amendment Due Process Clause**

Defendants separately assert the individual civil penalties are unlawful pursuant to the Fifth Amendment, arguing "the due process clause of the Fifth Amendment prohibits excessive fines" pursuant to *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).  Defs.' MSJ at 10–11.  They go on to assert the Fifth Amendment precludes the individual civil penalties assessed against Defendant Justice because "the ICP point system is arbitrary in the sense that it is not tied to loss amount or actual or estimated reclamation costs."  *Id.*  Defendants' Fifth Amendment argument fails because they cannot challenge the individual civil penalty regulations on their face and, regardless, *BMW* is inapplicable to this case involving statutorily prescribed penalties, and the individual civil penalties are not excessive or arbitrary in any event.

Defendants appear to challenge the federal regulations governing individual civil penalties as violating the Fifth Amendment on their face.  Defs.' MSJ at 11 ("the ICP point system is arbitrary"; the escrow requirement imposes an "undue burden").[8]  But SMCRA requires that "[a]ny action by the Secretary promulgating national rules or regulations . . . shall be subject to judicial review in the United States District Court for the District of Columbia Circuit" and any petition challenging such an action "shall be filed . . . within sixty days from the date of such action."  30 U.S.C. § 1276(a)(1).  The individual civil penalty regulations were promulgated in 1988, 53 Fed. Reg. 3664-01 (Feb. 8, 1988), meaning the statute of limitations for a facial challenge has long since run.  What is more, any such claim would have to be brought in the D.C. Circuit, and the D.C. Circuit has already upheld the individual civil penalty regulations, including OSMRE's decision not to use a point system to calculate individual civil penalties. *Nat'l Coal Ass'n v. Lujan*, 979 F.2d 1548, 1556-57 (D.C. Cir. 1992).

To the extent Defendants assert the Fifth Amendment Due Process Clause as a defense specifically against the individual civil penalties sought here, the argument finds no support in *BMW* because the holding in that case involved punitive damages imposed by a jury, *see* 517 U.S. at 562, not civil penalties imposed pursuant to a statutory and regulatory scheme like the one here.  *See Toth*, 33 F.4th at 19 ("*BMW* does not apply to cases like this one that involve a penalty set by statute."); *see also Pasco v. Protus IP Sols., Inc.*, 826 F. Supp. 2d 825, 834 (D. Md. 2011) (finding *BMW* inapplicable to statutory damages).

Statutory penalty schemes are treated differently from punitive damages because the purpose of the Fifth Amendment Due Process Clause—as articulated in *BMW*—is to ensure "that

---

[8] As explained above, Defendants' claims that the individual civil penalty regulations include a "point system" and require an individual to place the penalty amount into escrow in order to administratively challenge the penalty are incorrect.  *Supra* p. 8.

a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a [government] may impose." 517 U.S. at 574. But "[t]he concerns regarding fair notice to the parties of the range of possible punitive damage awards . . . are simply not present in a statutory damages case where the statute itself" and the relevant regulations "provide[] notice of the scope of the potential award." *Sony BMG Music Ent. v. Tenenbaum*, 719 F.3d 67, 70 (1st Cir. 2013). Moreover, one prong of the three-part test created by *BMW* considers the punitive damages in relation to those that could be imposed by statute. *BMW*, 517 U.S. at 583–85. "Because an award of statutory damages is by definition an authorized civil penalty, this guidepost would require a court to compare the award to itself, a nonsensical result." *Sony*, 719 F.3d at 71. In sum, *BMW*'s Due Process Clause analysis of jury-awarded punitive damages is inapplicable to the statutorily authorized individual civil penalties at issue here.

Regardless, any analysis of the reasonableness of the individual civil penalties under the Fifth Amendment would be the same as the analysis of the individual civil penalties under the Eighth Amendment. *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387-88 (4th Cir. 2015); *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 465 (D. Md. 2012). Because Defendant Justice's Eighth Amendment argument fails with respect to excessiveness, his Fifth Amendment argument likewise fails. *See supra* pp. 10–22; U.S. Mem. at 47–59.

In conclusion, the individual civil penalties do not violate the Fifth Amendment Due Process Clause. As such, the Court should deny Defendant Justice's Motion for Summary Judgment on this issue.

**4.    Defendants Are Precluded From Challenging OSMRE's Determination that Defendant Justice Acted "Willfully" Based on the Companies' Alleged Insolvency**

Seemingly separate from their Eighth and Fifth Amendment defenses, Defendants argue that OSMRE improperly determined that Defendant Justice acted "willfully" as required for the imposition of an individual civil penalty. Defs.' MSJ at 11-12.[9] They claim that Defendant Justice did not "willfully" authorize, order, or carry out the companies' SMCRA violations because the companies were insolvent "at or near the time the ICPs were imposed," *id.* at 12—the implication being that Defendant Justice was not acting with "intentional disregard or plain indifference" to the requirements of SMCRA and the federal regulations, *see* 30 C.F.R. § 701.5, but rather lacked the ability to compel the companies to comply with SMCRA and abate the relevant violations.

This argument fails for the nine individual civil penalties for which Defendant Justice entered into an abatement agreement because Defendant Justice has already conceded as to those penalties that he acted willfully. In each of those abatement agreements, Defendant Justice acknowledged that he "willfully and knowingly authorized, ordered, or carried out the corporate permittee's failure to comply with" the relevant cessation order. *See* U.S. Mem., Exhibits G-1 to G-9, US_0000886, US_0000892, US_0000898, US_0000904, US_0000910, US_0000919, US_0000930, US_0000938, US_0000949. Significantly, one of those nine abatement agreements where Defendant Justice conceded willful conduct pertains to the individual civil penalty in the highest amount ($1,037,685), which OSMRE assessed for Defendants' repeated failure to post a required bond. U.S. Mem., Exhibit G-9, US_0000949.

---

[9] Defendants assert that neither SMCRA nor its legislative history define the terms "willfully" and "knowingly." Defs.' MSJ at 11. They ignore that the federal regulations define both terms at 30 C.F.R. § 701.5.

To the extent that Defendants' argument regarding willfulness applies to the eight remaining individual civil penalties for which Defendant Justice did not enter into an abatement agreement, it repackages Defendants' Eighth Amendment argument as a challenge to OSMRE's penalty decisions and fails for the same reasons. As explained above, *supra* p. 13, Defendant Justice long ago conceded liability as to the individual civil penalties by operation of law. *See* 43 C.F.R. § 4.1302. Defendant Justice could have, but chose not to, file a petition for administrative review of any of the proposed individual civil penalties. If Defendant Justice had filed a petition for review, he could have challenged OSMRE's determination that he acted willfully on the basis of the companies' insolvency or on any other grounds. By failing to file a petition for review, Defendant Justice admitted liability and cannot now belatedly seek to challenge OSMRE's determination that he acted willfully for each individual civil penalty.

Defendant Justice's concession of liability by operation of law resolves this argument. But, as with their Eighth Amendment claim, the argument also fails because it turns on Defendants' alleged corporate insolvency, which their own prior statements thoroughly contradict. *Supra* p. 14. The Court should not permit Defendants to rewrite history in an effort to avoid being held accountable for their undisputed failure to timely reclaim mine sites.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the United States' motion for summary judgment, deny Defendants' motion, and grant judgment on Counts I and II to the United States in the total amount of $5,791,769, plus interest, late payment penalties, and administrative expenses.

Respectfully submitted this 9th day of January, 2024,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Michael K. Robertson*
Michael K. Robertson (DC Bar No. 1017183)
Clare Boronow (Barred in Maryland)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Tel.: (202) 305-9609
Fax: (202) 305-0275
michael.robertson@usdoj.gov
clare.boronow@usdoj.gov

CHRISTOPHER R. KAVANAUGH
United States Attorney

*/s/ Krista Consiglio Frith*
Assistant United States Attorney
Virginia Bar No. 89088
United States Attorney's Office
P.O. Box 1709
Roanoke, VA 24008
TEL (540) 857-2250
FAX (540) 857-2614
Email: krista.frith@usdoj.gov

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2024, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF System, which will send notice, and constitute service, of such

filing to all counsel of record.

*/s/ Krista Consiglio Frith*
Krista Consiglio Frith
Assistant United States Attorney
