IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br> )<br>   *Plaintiff,* )<br> )<br>**v.** )<br> )<br>**A&G COAL CORP., et al** )<br> )<br>   *Defendants.* ) | Civil Action No.: 7:23-cv-318 |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
THE UNITED STATES MOTION FOR SUMMARY JUDGMENT**

Defendants National Coal, LLC, Premium Coal Company, Inc., S and H Mining (collectively the "Companies"), and James C. Justice, III ("Justice") (collectively the "Defendants"), and state as follows for their Memorandum in Opposition to the United States Motion for Summary Judgment

**PRELIMINARY STATEMENT**

The United States primary argument against the application of the Eighth Amendment to the Individual Civil Penalties ("ICP") at issues is that James C. Justice, III's ("Justice") conduct is not tied to any criminal proceedings or alleged criminal conduct. This narrow view of the Eighth Amendment does not comport with the amendment's history or established precedent. Further, it overlooks OSMRE's own enforcement statute which provides for potential criminal penalties for the same conduct. For the foregoing reasons, the Eighth Amendment's Excessive Fines Clause applies and bars imposition of the ICPs against Justice.

## ARGUMENTS & AUTHORITIES

### I. THE HISTORY OF THE EIGHTH AMENDMENT FAVORS JUSTICE

The right to be free from excessive monetary penalties is "fundamental to the American scheme of justice," *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968), and is protected right under the Fourteenth Amendment. *See also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 764 (2010). The deep historical roots of the right are well-established, and the United States Supreme Court has recognized that the Excessive Fines Clause traces back to the Magna Carta.[1] *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989). At the time of the United States Constitution's ratification, most States had analogues to the Excessive Fines Clause delineated in State Constitutions or Declarations of Rights. *See e.g.*, Va. Decl. of Rights § 9 (1776) ("excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.")

This history followed to the time of the adoption of the Bill of Rights. Its drafters "were aware and took account of the abuses that led to the 1689 Bill of Rights," *Browning-Ferris*, 492 U.S. at 267, and so they "uncritically" adopted its language, "treating it as a shorthand expression for ancient rights rooted in the soil of English Law." *See* 2 Joseph Story, Commentaries on the Constitution of the United States 624 (Thomas M. Cooley ed., 4th ed. 1873) (the Eighth Amendment was "adopted as an admonition to all departments of the national government, to warn them against such violent proceedings as had taken place in England in the arbitrary reigns of some of the Stuarts").

---

[1] The Magna Carta limited royal abuses of financial payments in four distinct ways: "by requiring that one be amerced only for some genuine harm to the Crown; by requiring that the amount of the amercement be proportioned to the wrong; by requiring that the amercement not be so large as to deprive him of his livelihood; and by requiring that the amount of the amercement be fixed by one's peers, sworn to amerce only in a proportionate amount." *Browning-Ferris*, 492 U.S. at 271.

2

Thus, the right to be free from excessive fines of any nature is an ancient right, dating back to the foundation of civilized government, that went far beyond conduct tied to criminal activity. Rather, the ancient right barred excessive economic sanctions of all kinds, even those that served partially remedial purposes. Today, the Excessive Fines Clause should honor its historical roots and serve as a constitutional provision designed to shield people from the potentially devastating monetary sanctions and forfeitures the government could otherwise impose. *See United States v. Bajakajian*, 524 U.S. 321, 328 (1998) ("The Excessive Fines Clause . . . limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.")

## II. THE INDIVIDUAL CIVIL PENALTIES AT ISSUE ARE SANCTIONS THAT FALL UNDER THE EXCESSIVE FINES CLAUSE

The ICPs only need to be partially punitive to qualify as a sanction under the Eighth Amendment. In *Austin v. United States*, 509 U.S. 602, 610 (1993), the United States Supreme Court made clear that, consistent with the deeply rooted history of the Excessive Fines Clause, remedial sanctions should be considered "fines" whenever they serve a punitive purpose. *Id*. at 621 – 22. This holding was reaffirmed in *Timbs v. Indiana*, 139 S. Ct. 682 (2019), which involved a civil in rem action seeking forfeiture of a criminal defendant's vehicle, wherein the Court unanimously held that "civil in rem forfeitures are fines for purposes of the Eighth Amendment when they are at least partially punitive." *Id*. at 690.

The fact that a "fine" need only be partially punitive stems directly from this Court's acknowledgement that the history of the Excessive Fines Clause indicated a right of a citizen to be free from prosecutorial abuse that may occur when fines are used "for the purpose of raising revenue." Beth A. Colgan, The Excessive Fines Clause: Challenging the Modern Debtors' Prison, 65 UCLA L. Rev. 2, 20 (2018) (*quoting Browning-Ferris*, 492 U.S. at 275). Thus, even

3

when an economic sanction goes primarily toward reimbursing government expenses or serves other remedial purposes, there is still an intolerable risk of government overreach which arises from the government's use of its coercive, prosecutorial power.

Here, it is undisputed the entire purpose of SMCRA's penalty structure is deterrence and compliance, 30 C.F.R. § 845.2, and the ICPs are designed, in part, to force an owner of a corporate entity to undertake reclamation activities and to punish for inaction. *See* 30 U.S.C. § 1268(f); 30 C.F.R. § 846.12(a). This is a coercive sanction under the Excessive Fines Clause. The United States' argument ignores the fact that the SMCRA mandates that fines be imposed upon individuals to ensure compliance with a governmental directive. The threat of the ICP operates as a deterrence mechanism to owner/operators and the penalty is the punishment for non-compliance. This falls into the historical definition of a "fine" under the Excessive Fines Clause and mandates application of the Eighth Amendment to the ICPs at issue.

### III. THE INDIVIDUAL CIVIL PENALTIES DO NOT HAVE TO BE TIED TO CRIMINAL PROCEEDINGS FOR THE EXCESSIVE FINES CLAUSE TO APPLY

The flaw in the United States' argument is its fixation on the need for the conduct at issue to be tied to criminal proceedings. This focus ignores *Austin* which mandates that the scheme only serve, in part, to penalize individuals for conduct the state deems wrongful. 509 U.S. at 610-11. The United States Supreme Court has never held that civil sanctions unconnected to criminal behavior cannot constitute fines. The civil sanctions found to be fines in *Austin* and *Timbs* were connected to criminal conduct, but the Court made clear that such a connection is not always required. "The notion of punishment . . . cuts across the division between the civil and the criminal law," and "civil penalties" may advance punitive as well as remedial goals." *Austin*, 509 U.S. at 610. Thus, the question is not . . . whether [an economic sanction] is civil or

4

criminal, but rather whether it is punishment."[2] *Austin*, 509 U.S. at 610.  This is rooted in the history of the Eighth Amendment.  The Excessive Fines Clause "would mean little if the government could evade constitutional scrutiny under the Clause's terms by the simple expedient of fixing a 'civil' label on the fines it imposes and declining to pursue any related 'criminal' case." *Toth v. United States*, 143 S. Ct. 552, 553 (2023) (Gorsuch, J., dissenting from denial of certiorari).

Even if the United States' argument was persuasive, it ignores that the SMCRA leaves open the possibility of criminal sanctions.  The individual penalty statute, 30 U.S.C. § 1268(f), notes that any director, officer, or agent willfully and knowingly authorized, ordered, or carried out such violation shall be subject to the same *civil penalties, fines, and imprisonment* as others who violate the statute.  *Id.*  Thus, Justice faces the potential for criminal prosecution for the same conduct that triggered the ICP.  Just because the government declined to prosecute does not mean that the potential conduct is divorced from potential criminal action.  As Justice Gorsuch noted in his dissent in *Toth*, the United States should not be allowed to escape analysis under the Excessive Fines Clause simply because they chose to impose a civil penalty rather than initiate criminal prosecution.  This would permit the government to completely disregard an important civil liberty granted to individuals for generations.

## IV. WHETHER OR NOT THE FINES ARE EXCESSIVE REQUIRES A PROPORTIONALITY ANALYSIS AND MAY REQUIRE DISCOVERY

The United States assets that the ICPs are not excessive because they fall within SMCRA's arbitrary statutory scheme.  This overlooks the seven-figure penalty imposed against Justice who oversaw mining operations for several businesses that were not actively mining coal at the time the penalties were imposed.  It further ignores any argument regarding Justice's

---

[2] As discussed¸ *supra*, these penalties are clearly a punishment for an owner/operators failure to act.

individual financial circumstances. The Excessive Fines Clause mandates consideration of an individual's financial circumstances in determining whether a fine, fee, or forfeiture is excessive. The United States Supreme Court has held that "[t]he touchstone of the constitutional inquiry under the Excessive Fines clause is the principle of proportionality[.]" *Bajakajian*, 524 U.S. at 334.

The proper test for proportionality is not solely, as the United States suggest, proportionality to the offenses or harm by the offender, but must also consider Justice's own financial circumstances. Should the court find that the Excessive Fines Clause applies, limited discovery on Justice's personal financial situation may be necessary so a proper proportionality can be conducted. *See United States v. Fogg*, 666 F.3d 13 (1st Cir. 2009) (proper question under Excessive Fines analysis is whether fine threatens to deprive defendant of future livelihood); *United States v. Viloski*, 814 F.3d 104, 111 (2d Cir. 2016) (courts may consider . . . whether a forfeiture would deprive the defendant of his livelihood, i.e., his future ability to earn a living). Given the million dollar penalties at issue, the question of whether or not this threatens to cause financial ruin is apparent on its face.

## CONCLUSION

For the foregoing reasons, the Court should deny the United States' Motion for Summary Judgment, and find that the Eighth Amendment defense applies as a matter of law to the penalties at issue.

>
> Respectfully submitted,
>
> NATIONAL COAL, LLC., et al.

6

By: /s/    Aaron Balla Houchens
Of Counsel

Aaron B. Houchens, Esq. (VSB #80489)
AARON B. HOUCHENS, P.C.
111 East Main Street
P.O. Box 1250
Salem, Virginia 24153
540-389-4498 (telephone)
540-339-3903 (facsimile)
aaron@houchenslaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2023, a true and accurate copy of the foregoing was provided to the following via the Court's CM/ECF electronic filing system:

Krista Consiglio Frith
United States Attorneys Office - Roanoke
Western District of Virginia
310 First Street, SW, Suite 906
Roanoke, VA 24008
Tel.: 540-857-2956
Fax: 540-857-2283
Krista.Frith@usdoj.gov

/s/    Aaron Balla Houchens